[No. B180724. Second Dist., Div. Five. June 27, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
DERIC MONROE MASON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.C.

**COUNSEL**

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Deric Monroe Mason, appeals from his convictions for carjacking (Pen. Code,[1] § 215, subd. (a)) and firearm possession (§ 12021.1, subd. (a)), as well as the findings of personal firearm use (§ 12022.53, subd. (b)), a principal was armed with a firearm (§ 12022, subd. (a)(1)), and he had previously been convicted of serious felonies on three occasions. (§§ 667, subds. (b)–(i), 1170.12.) In the published portion of this opinion, we conclude: the trial court correctly denied the motion to dismiss the carjacking charge pursuant to section 1387.1, subdivision (a); the trial court should have

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

dismissed the weapons possession charge as required by section 1387, subdivision (a); and there was substantial evidence to support defendant's carjacking conviction.

## II. FACTUAL BACKGROUND

We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People v. Osband* (1996) 13 Cal.4th 622, 690 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908–909.) On January 20, 2004, Jackie Long went to a private party at a Hollywood restaurant. At approximately 12:30 a.m., Mr. Long decided to leave. Mr. Long walked to his truck, which was parked on McCadden Street adjacent to the restaurant. Mr. Long got into his truck. Mr. Long put his key in the ignition and closed the door. Immediately thereafter, defendant opened the driver's-side door and said, "Get the fuck over, get the fuck over, get the fuck over." Mr. Long was very frightened and hesitated. Defendant began hitting Mr. Long in the face with an object that was covered in rubber. As Mr. Long moved over in the truck cab, another man appeared. Defendant went around to the passenger side of the truck. The second man got into the driver's seat. Defendant entered the truck cab and began to hit Mr. Long who by now had moved into the middle of the front seat. Mr. Long saw that both individuals had guns. Mr. Long began screaming, "Ya'll can take everything, help, help, help, ya'll can take everything you want." One of the men responded: "Shut the fuck up. Shut the fuck up. Shut the fuck up." Throughout the incident, Mr. Long could see defendant's face. Mr. Long could also see the face of the individual in the driver's seat. The interior light was on throughout the struggle.

The man in the driver's seat, defendant's unidentified accomplice, attempted to start the truck. However, the emergency brake was engaged. The truck moved approximately one foot before it stalled. Mr. Long saw a man on Hollywood Boulevard flag down a police car. The police car made a U-turn and drove down McCadden Street. Mr. Long's two assailants left his truck when the police car approached. The two suspects ran in opposite directions. Mr. Long later identified defendant from two separate photographic lineups on different occasions. Mr. Long also identified the gun used in the carjacking at the police station and at trial.

Los Angeles Police Officer Daniel Pesqueira was flagged down by a citizen on the corner of McCadden Street and Hollywood Boulevard. The citizen told Officer Pesqueira, "something is going down" and pointed toward McCadden Street. Officer Pesqueira made a U-turn and turned onto McCadden Street. Officer Pesqueira saw Mr. Long standing beside a black Ford Explorer. Mr. Long said, "Hey, this guy's trying to jack me." Defendant, who was

near the passenger side of the truck, looked toward Officer Pesqueira and ran. Officer Pesqueira followed defendant in the patrol car. Defendant made a throwing motion as he was running up a ramp. Defendant was later found hiding behind a power-grid box. A subsequent search of the area revealed a large silver .44-caliber revolver in the area near the ramp.

Lawrence Toliver was working as a security guard at the Musician's Institute on McCadden Street on January 20, 2004. Shortly after midnight, a student came to the door and said, "I think there's a problem up the street, somebody looks like they're getting mugged in their car." Mr. Toliver walked toward Hollywood Boulevard. Mr. Toliver saw a black truck "shaking and rumbling." The brake lights on the truck went on and off. Mr. Toliver testified, "[I]t looked like somebody was trying to drive off." Mr. Toliver stated, "It lurched forward and then stopped and stalled." Mr. Toliver heard screams of, "Help," coming from the direction of the truck. Thereafter, the doors of the truck were opened and three people jumped out. One of the three ran toward Hollywood Boulevard. The other two ran towards Mr. Toliver. Mr. Toliver then saw a police car approach. One of the two men ran into an alley. The other man ran up a nearby ramp. The man that ran up the ramp was carrying a big silver gun.

## III. DISCUSSION

### A. Defendant's Dismissal Motion

#### 1. Factual and procedural background

Defendant argues the trial court improperly denied his sections 1387, subdivision (a) and 1387.1, subdivision (a) dismissal motion. This case involves two dismissals. The first dismissal occurred on February 19, 2004. The second dismissal occurred on July 9, 2004. When this case was initially scheduled for a preliminary examination on February 19, 2004, the prosecution was unable to proceed because the subpoenas had been sent to the investigating officer only the day before the hearing. But the subpoenas had not been served and the preliminary hearing could not proceed. The case was dismissed pursuant to section 1382, subdivision (a) at that time. The prosecution refiled the felony complaint on February 19, 2004. The preliminary hearing was finally held on March 2, 2004.

The information was filed on March 16, 2004. At the arraignment, the case was set for trial May 5, 2004. On April 20, 2004, defendant's continuance motion was granted. The May 5, 2004 trial date was vacated. The case was set for a pretrial conference on May 5, 2004. On May 5, 2004, the parties forgot that the trial date had been vacated. The trial was continued (although

the trial date had previously been vacated) to June 7, 2004. On June 7, 2004, the trial was set for June 21, 2004. On June 21, 2004, the case was continued for trial until June 28, 2004. On June 28, 2004, defense counsel failed to appear. On June 29, 2004, the parties stipulated that the trial be continued to July 7, 2004. Defendant never filed a section 1050, subdivision (a) declaration seeking a continuance prior to any of the foregoing dates.

Deputy District Attorney Martha Zepeda was assigned to the case on July 7, 2004. On July 8, 2004, Ms. Zepeda announced ready for trial. On July 8, 2004, jury selection commenced. On July 9, 2004, Ms. Zepeda notified the court that she was unable to proceed because the victim, Mr. Long, was unavailable to testify. According to Ms. Zepeda: Mr. Long had been cooperative and made himself available through several continuances since he was first subpoenaed in the case; Mr. Long had provided his personal home and cellular telephone numbers as well as that of his grandparents; following a continuance on June 7 to 21, 2004, Mr. Long was contacted by the prosecutor's witness coordinator; and on June 23, 2004, Mr. Long was advised of "the new trailing period" by the witness coordinator. Mr. Long, an actor, had misunderstood that he remained on call to testify and had left the country to work on a film. Mr. Long left the country without notifying the prosecution witness coordinator. Ms. Zepeda's motion for a good cause continuance was denied. The parties stipulated that the case would proceed on the same accusatory pleading pursuant to section 1387.2. Defendant was rearraigned. Defendant did not object to the rulings of July 9, 2004.

On August 19, 2004, defendant filed a motion to dismiss pursuant to sections 1387, subdivision (a) and 1387.1, subdivision (a). The trial court denied the dismissal motion. The trial court found there was excusable neglect present on July 9, 2004, when the case was dismissed because Mr. Long did not appear to testify.

### 2. The dismissal motion was properly denied as to the carjacking charge

#### a. Applicable law

Section 1387, subdivision (a) provides in pertinent part: "An order terminating an action pursuant to this chapter . . . is a bar to any other prosecution for the same offense if it is a felony . . . and the action has been previously terminated pursuant to this chapter . . . ." This commonly called in felony cases the two dismissal rule. (See *Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1023 [22 Cal.Rptr.3d 876, 103 P.3d 276], *People v. Posey* (2004) 32 Cal.4th 193, 206–207 [8 Cal.Rptr.3d 551, 82 P.3d 755].) However, section 1387.1 provides: "(a) Where an offense is a violent felony, as defined in

Section 667.5 and the prosecution has had two prior dismissals, as defined in Section 1387, the people shall be permitted one additional opportunity to refile charges where either of the prior dismissals under Section 1387 were due solely to excusable neglect. In no case shall the additional refiling of charges provided under this section be permitted where the conduct of the prosecution amounted to bad faith. [¶] (b) As used in this section, 'excusable neglect' includes, but is not limited to, error on the part of the court, prosecution, law enforcement agency, or witnesses." Section 1387.1 is an exception to the so-called two-dismissal rule. (See *Burris v. Superior Court, supra,* 34 Cal.4th at p. 1019, fn. 6; *People v. Superior Court (Martinez)* (1993) 19 Cal.App.4th 738, 743–744 [23 Cal.Rptr.2d 733].)

### b. Excusable neglect

■ As to the carjacking count, defendant argues that the court improperly denied his dismissal motion because neither of the two prior dismissals in this case was the result of excusable neglect. In *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 741 [124 Cal.Rptr.2d 591], our colleagues in the Court of Appeal for the Fourth Appellate District held: "The term 'excusable neglect' in 1387.1 is given the same construction in criminal cases as it has been given in civil cases. [Citation.] ' "Simply expressed, '[e]xcusable neglect is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances.' " [Citation.]' (*People v. Massey* (2000) 79 Cal.App.4th 204, 211 [93 Cal.Rptr.2d 890].)" We review the trial court's section 1387.1 excusable neglect finding for an abuse of discretion. (*Miller v. Superior Court, supra,* 101 Cal.App.4th at p. 741; see *People v. Massey, supra,* 79 Cal.App.4th at p. 211 ["section 1387.1 is generally a discretionary determination"].)

The trial court did not abuse its discretion when it ruled that the prosecution's inability to produce Mr. Long for trial on July 9, 2004, was the result of excusable neglect. Mr. Long had cooperated fully with the prosecution up to that point in time. Mr. Long advised the prosecution of his telephone number as well as contact information for his grandparents. Mr. Long kept the witness coordinator aware of his whereabouts through several continuances while defense counsel made successful efforts to delay the trial. The last trial date relayed to Mr. Long was June 21, 2004. Mr. Long was last contacted on June 23, 2004, and advised of the new "trailing period" by a witness coordinator. Apparently, when Mr. Long left the country to work in the filming of a movie, he was unaware of the fact that the trial would commence on July 9, 2004. This is a case with repeated continuances at the request of the defense. Once, the case was continued because defense counsel failed to appear for trial. None of the continuances were preceded by the filing of a notice of motion to continue. It was through no fault of

Ms. Zepeda's that the trial could not commence on that date. Ms. Zepeda had every reason to believe that Mr. Long would make himself available, as he had in the past. The trial court's excusable neglect finding and the ensuing order denying the motion to dismiss the carjacking charge was not an abuse of discretion.

### 3. The weapons possession charge should have been dismissed

 Defendant argues and the Attorney General concedes that the violation of section 12021.1, subdivision (a), possession of a firearm with a prior conviction, was not a violent felony within the meaning of sections 667.5, subdivision (c) and 1387.1, subdivision (a). The July 9, 2004 order was the second dismissal of the firearms possession charge. The firearms possession charge is not a violent felony. Section 1387.1, subdivision (a), which allows for a third filing in the case of excusable neglect, does not apply to a nonviolent felony such as a violation of section 12021.1, subdivision (a). In assessing whether to dismiss, each count is evaluated individually. (*People v. Woods* (1993) 12 Cal.App.4th 1139, 1155 [15 Cal.Rptr.2d 906]; *Dunn v. Superior Court* (1984) 159 Cal.App.3d 1110, 1114 [206 Cal.Rptr. 242].) The carjacking charge could be pursued after two dismissals, given the excusable neglect provisions of section 1387.1, subdivision (a). But the same is not true of the weapons possession count because it is not a violent felony.

Finally, the stipulated-to July 9, 2004, section 1387.2 termination has the same force and effect of a dismissal for purposes of the section 1387, subdivision (a) two-dismissal rule. There is some confusion because section 1382, subdivision (a) refers to a case that is dismissed. The so-called two-dismissal rule in section 1387, subdivision (a) refers to an order "terminating" a case. As will be noted, so do the stipulation provisions of section 1387.2. For the following reasons, we hold the terms dismissed and terminated are synonymous for purposes of this case.

 Section 1387.2 states: "Upon the express consent of both the people and the defendant, in lieu of issuing an order terminating an action the court may proceed on the existing accusatory pleading. *For the purposes of Section 1387, the action shall be deemed as having been previously terminated.* The defendant shall be rearraigned on the accusatory pleading and a new time period pursuant to Section 859b or 1382 shall commence." (Italics added.) Section 1387.2 is part of chapter 8 of title 10 of part 2 of the Penal Code. Chapter 8 consists of sections 1381 through 1388. Section 1382,

subdivision (a) refers to a charge that is dismissed under specified circumstances.[2] As previously noted, section 1387, subdivision (a), commonly referred to as the two-dismissal rule, refers to an order terminating a criminal action.[3] Common sense tells us the "order terminating an action" language in section 1387, subdivision (a) includes a dismissal as specified in section 1382, subdivision (a). (See *Robles v. Superior Court* (2003) 110 Cal.App.4th 1510, 1514 [2 Cal.Rptr.3d 861] [when an action is dismissed pursuant to a § 1387.2 stipulation, there is only one case for purposes of Code Civ. Proc., § 170.6, subd. (a)(3)]; *Paredes v. Superior Court* (1999) 77 Cal.App.4th 24, 35 [91 Cal.Rptr.2d 350] [an action refiled after a § 1382, subd. (a) dismissal is not a continuation of the original case for purposes of Code Civ. Proc., § 170.6, subd. (a)(3)].) The same is true as to the "two prior dismissals" language in section 1387.1, subdivision (a). Further, section 1387.2 expressly states the stipulated-to termination, such as occurred on July 9, 2004, has the same force and effect of an order terminating an action pursuant to section 1387, subdivision (a). For the limited purposes of chapter 8 of title 10 of part 2 of the Penal Code, the concepts of dismissal and termination, in their varying grammatical forms, are synonymous.

Our views are consistent with the limited legislatively promulgated documents prepared in 1992 for section 1387.2. Our colleagues in Division One of this appellate district, while analyzing a Code of Civil Procedure section 170.6, subdivision (a)(3) peremptory disqualification issue, discussed one Legislative committee report: "After noting that, under the usual procedures, 'the case must start over if refiled,' the report quotes the California Judges' Association as stating that this bill would 'allow for a case not to be dismissed, upon the express consent of both the prosecution and the defense, and go on, but the action considered as a "dismissal" for purposes of the "one-dismissal" rule. This would eliminate delays, rearrest, rebooking, refiling, and relitigation if there had already been hearings. Both sides of the lawsuit gain and the court would eliminate costly duplication of efforts.' " (*Paredes v. Superior Court, supra,* 77 Cal.App.4th at p. 36, fn. 8 quoting Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1721 (1991–1992 Reg. Sess.) June 16, 1992; see *Robles v. Superior Court, supra,* 110 Cal.App.4th at p. 1514.) The Legislative Counsel's Digest for Senate Bill No. 1721 states in part, "[F]or specified purposes, the action shall be deemed as having been previously terminated . . . ." (Legis. Counsel's Dig., Sen. Bill No. 1721 (1991–1992 Reg. Sess.) 4 Stats. 1992, Summary Dig. p. 99.)

---

[2] *Section 1382, subdivision (a) states in part, "The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases. . . ."*

[3] Section 1387, subdivision (a) states in part, "An order terminating an action pursuant to this chapter . . . is a bar to any other prosecution for the same offense if it is a felony . . . and the action has been previously terminated pursuant to this chapter . . . ."

For purposes of the section 1387, subdivision (a) two-dismissal rule applicable to nonviolent felonies under specified circumstances, the July 9, 2004, section 1387.2 termination constituted the second dismissal or order terminating an action. Because the weapons charge is a nonviolent felony, the second termination or dismissal order barred further prosecution of that one count. The conviction for violating section 12022.1 subdivision (a) is reversed. Upon issuance of the remittitur, the firearm possession conviction is to be dismissed.

## B. Sufficient Asportation for Carjacking

Defendant argues that there was insufficient evidence to support his carjacking conviction. More specifically, defendant argues that there was insufficient evidence of asportation of Mr. Long's truck to satisfy the felonious taking requirement. In reviewing a challenge of the sufficiency of the evidence, we apply the following standard of review: "[We] consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432 [6 Cal.Rptr.2d 822, 827 P.2d 388], fn. omitted; *People v. Hayes* (1990) 52 Cal.3d 577, 631 [276 Cal.Rptr. 874, 802 P.2d 376]; *People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738]; see also *People v. Smith* (2005) 37 Cal.4th 733, 738–739 [37 Cal.Rptr.3d 163, 124 P.3d 730]; *People v. Gurule* (2002) 28 Cal.4th 557, 630 [123 Cal.Rptr.2d 345, 51 P.3d 224].) Our sole function is to determine if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia, supra,* 443 U.S. at p. 319; *People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374]; *People v. Marshall* (1997) 15 Cal.4th 1, 34 [61 Cal.Rptr.2d 84, 931 P.2d 262]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]; *People v. Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]; *Taylor v. Stainer, supra,* 31 F.3d at pp. 908–909.) The standard of review is the same in cases where the prosecution relies primarily on circumstantial evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618]; *People v. Stanley* (1995) 10 Cal.4th 764, 792 [42 Cal.Rptr.2d 543, 897 P.2d 481]; *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698]; *People v. Bean* (1988) 46 Cal.3d 919, 932 [251 Cal.Rptr. 467, 760 P.2d 996].) The California Supreme Court has held, "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin, supra,* 18 Cal.4th at p. 331, quoting *People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

■ In *People v. Lopez* (2003) 31 Cal.4th 1051, 1062–1063 [6 Cal.Rptr.3d 432, 79 P.3d 548], the California Supreme Court held: "[B]ased on the language of [Penal Code section 215] and its legislative purpose, carjacking adapts and expands specific elements of robbery to address increasing auto theft incidents by perpetrators who may not intend to permanently deprive their victims of possession of their vehicles . . . . Yet the legislative history is silent as to whether the Legislature intended to further distinguish the crime of carjacking from the crime of robbery by eliminating the asportation requirement. In the absence of a contrary intent, we presume that in adopting the phrase, 'felonious taking,' from the robbery statute, the Legislature intended that those same words within section 215 be given the same construction." We reached the same conclusion in *People v. Vargas* (2002) 96 Cal.App.4th 456, 462–463 [116 Cal.Rptr.2d 867] where we held, "[I]n order for the completed offense of carjacking to occur, there must be a felonious taking of the motor vehicle." In *Lopez*, the Supreme Court also noted: " 'To satisfy the asportation requirement for robbery, "no great movement is required, and it is not necessary that the property be taken out of the physical presence of the victim." [Citations.]' " (*People v. Lopez, supra,* 31 Cal.4th at p. 1060, quoting *People v. Hill* (1998) 17 Cal.4th 800, 852 [72 Cal.Rptr.2d 656, 952 P.2d 673].) In order for a "felonious taking" to occur, the property, in this case Mr. Long's truck, must be the subject of "slight" movement. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165 [282 Cal.Rptr. 450, 811 P.2d 742]; *People v. Vargas, supra,* 96 Cal.App.4th at p. 463; *People v. Pham* (1993) 15 Cal.App.4th 61, 65–67 [18 Cal.Rptr.2d 636]; *People v. Clark* (1945) 70 Cal.App.2d 132, 133 [160 P.2d 553]; Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 93, pp. 123–124.)

■ In this case, defendant and an unidentified accomplice physically took possession of Mr. Long's truck. During this portion of the incident, Mr. Long remained inside his truck. Defendant continued to beat Mr. Long. While this was transpiring, defendant's accomplice attempted to drive the truck away. When the accomplice started the truck, the parking brake was engaged. According to Mr. Long, the truck lurched forward approximately one foot and stalled. Mr. Toliver testified that the truck was "shaking and rumbling" and its brake lights went on and off. Although slight, this movement of Mr. Long's truck was sufficient *on appeal* to satisfy the carjacking asportation requirement.

C. Trial Court's Exercise of Discretion Pursuant to Section 1385*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

*See footnote, *ante*, page 1190.

## IV. DISPOSITION

The judgment of conviction for violating section 12021.1, subdivision (a) is reversed. Upon issuance of the remittitur, the charge of a violation of section 12021.1, subdivision (a) is to be ordered dismissed. The judgment is affirmed in all other respects.

Armstrong, J., and Mosk, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 27, 2006, S144775.