Filed 11/10/15  P. v. Snyder CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060990 |
| v. | (Super.Ct.No. SWF1201846) |
| JOSHUA FRANKLIN SNYDER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr, Randall Einhorn, and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

1

Angered when his girlfriend, Jane Doe, informed him she wanted to date others, defendant Joshua Snyder grabbed an ultrasound device and headed out of her house. The two argued, and the argument poured out of the house to the defendant's pickup truck, then back into the house, where defendant removed a container of protein powder and an empty five-gallon water bottle before head-butting Doe and returning to his truck. After further argument and struggle, during which Jane Doe attempted to reach into the truck to grab her property, defendant attempted to close the pickup door on Jane Doe's arm. Defendant was charged with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1), count 1),[1] assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 2), and robbery (§ 211, count 3), along with two prior convictions, and an allegation that the offenses were committed while out on bail in another case (§ 12022.1); he was tried by a jury. He was acquitted of assault with a deadly weapon, convicted of misdemeanor assault as a lesser offense in count 2, and robbery, and sentenced to eight years in prison. He appealed.[2]

On appeal, defendant argues that there is insufficient evidence to support the conviction for robbery. We affirm.

---

[1] All further statutory references are to the Penal Code, unless otherwise specified.

[2] Defendant also filed a companion petition for writ of habeas corpus, *In re Joshua Snyder on Habeas Corpus,* Case No. E063245, in propria persona. We will decide that petition separately.

**BACKGROUND**

On August 23, 2012, Jane Doe, a fitness professional, was recovering from cosmetic surgery she had undergone a few months before. To remove scar tissue and improve circulation at the surgery site, she used a small hand-held electronic ultrasound device, paid for by defendant, that plugged into the wall.

At that time, she had been dating defendant for a few months, although she had been friends with him prior to engaging in a more intimate relationship with him. On the date in question, defendant came to the house where Jane Doe lived with her parents to talk to her. Doe explained she wanted to see other people besides just defendant, which made defendant upset. When she tried to explain, defendant's anger escalated, he raised his voice and started to become combative. Doe asked him to leave. Defendant grabbed the ultrasound device from where it was plugged into the wall. When Doe asked defendant what he was doing, defendant replied that the device was his. Doe protested that the item had been a gift and belonged to her,[3] but defendant said he was taking it back.

Defendant exited the house and tossed the device onto the passenger seat of his pickup truck. The couple argued loudly enough to bring Doe's mother outside. The yelling continued and a neighbor came out to see if help was needed. Doe's

---

[3] The device was purchased from Doe's doctor to aid her post surgery recovery. However, defendant testified Doe had left her credit cards in the car, so he paid for the device for her. Doe thought it was a gift.

mother convinced Doe and defendant to return to the house, and offered defendant $50.00 for the device.

Defendant opened the driver's door, and as he did so, Doe tried to reach over him to grab the device. Defendant pushed her away from the vehicle and pulled the door closed, striking Doe's arm approximately three times. Then they returned to the house, where they resumed their argument. Doe told defendant to leave and he walked to the doorway, after grabbing a large bottle of protein powder Doe had just purchased worth $50 or $100, and a five-gallon water bottle. At the doorway, defendant braced himself as Doe tried to push him out the door. Then defendant stopped bracing himself and started to walk out the door, followed closely by Doe. After several steps, defendant turned around and head-butted Doe, causing a bump on her forehead and a black eye. Then defendant proceeded to drive off, taking with him the ultrasound device and protein powder belonging to Doe.[4]

In the days that followed, defendant sent text messages to Doe and her mother, advising them of his desire to take his own life. Defendant continued sending text messages of apology to Doe in the days that followed. Doe agreed to meet with defendant in a public place, at a hotel in San Diego where she planned to meet a friend. They conversed for a time, and defendant asked to see Doe's cell phone. Defendant threatened to submerge the phone in water and would not return

---

[4] Doe eventually recovered the ultrasound device, but did not recover the protein powder.

it to her, which upset Doe, a real estate broker (in addition to being a professional fitness competitor), who needed the phone for business.

Concerned for her safety, Doe took her purse and the laptop she had with her, and left for the lobby to meet a friend. In the lobby, defendant told Doe her phone was up in the room, and defendant went out. Doe followed defendant to the street where both she and her friend requested return of the phone. Defendant removed the phone from his pocket and smashed it against the ground, then took off running after dropping it into a trash can. Doe called the police who arrested defendant at the hotel.

Defendant was charged with assault with a deadly weapon (§ 245, subd. (a)(1), count 1), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 2), robbery in a dwelling (§§ 211, 212.5, subd. (a), count 3), and driving on a suspended license. (Veh. Code, § 14601.2, subd. (a), a misdemeanor, count 4.) It was further alleged that defendant had been twice convicted of and sentenced to state prison for separate felonies (prison priors), within the meaning of Penal Code section 667.5, subdivision (b), and that the offenses were committed while defendant was out on bail on another case. (§ 12022.1.)

Jury trial commenced on July 29, 2013, on which date the People dismissed count 4, the misdemeanor charge of driving on a suspended license. Defendant testified in his own defense at trial. He denied that the ultrasound device was a

5

gift to Doe: he had paid for her device with the understanding that she would buy another one at her next doctor visit to give to defendant. He also testified that Doe had jumped on his back and was punching and choking him with her arm around his neck, when he tried to leave the house the first time, and that she had slammed his head into the doorway.

In his truck, defendant noticed that the power adapter for his phone and computer was missing from the console, and returned to the house demanding that she return it. Doe demanded that he leave, so he took the protein powder as collateral until she returned his power adapter. He felt Doe trying to jump on his back again and turned around, hitting her on her head with his head. Back in his truck, he had not realized her arm was in the opening when he went to close his pickup door to leave. Defendant's roommate saw defendant when he returned home that night, with such bruising and cuts that it looked like he had been in a fight.

The jury acquitted defendant of assault with a deadly weapon as to count 1, found him guilty of simple assault, as a lesser included offense within count 2, but convicted him of robbery as charged in count 3. On the date of the scheduled court trial respecting the enhancement allegations, defendant admitted two prior prison terms for separate convictions for felony drunk driving, and admitted he was out on bail at the time of the commission of the current offenses. Defendant

made a motion for new trial, which was denied, and was sentenced to state prison for an aggregate term of eight years.[5] Defendant timely appealed.

## DISCUSSION

Defendant argues that there is insufficient evidence to support his robbery conviction where there is no evidence he intended to deprive the owner of her property permanently. Specifically, defendant argues the ultrasound device was taken under a claim of right, and the protein powder was taken without the intent to permanently deprive Doe of its use for an extended period of time. We disagree.

In reviewing a sufficiency of evidence claim, our role is limited; we determine whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.) On appeal, we must view "'the whole record in the light most favorable to the judgment' to determine whether it contains sufficient evidence 'such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1097-1098 [conc. & dis. opn. of Cuellar, J.].) We view the evidence in the light most favorable to the People and must presume in support of the judgment the existence

---

[5] On February 14, 2014, the initial sentencing date, the court stayed the two-year term for the on-bail enhancement, pending resolution of the case for which defendant had been released on bail prior to his arrest on the current charges. On June 30, 2014, the court vacated that sentence and resentenced defendant to eight years, imposing the two-year term for the on-bail enhancement.

7

of every fact the trier could reasonable deduce from the evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Reversal is unwarranted unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conviction. (*People v. Mason* (2006) 140 Cal.App.4th 1190, 1199.)

Substantial evidence must be of ponderable legal significance, reasonable in nature, credible and of solid value. (*People v. Johnson* (2014) 229 Cal.App.4th 910, 919.) While we must ensure that the evidence is reasonable, credible and of solid value, it is the exclusive province of the judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. (*People v. Smith, supra,* 37 Cal.4th at p. 739.) The uncorroborated testimony of a single witness is sufficient to support a conviction unless it is physically impossible or inherently improbable. (*People v. Prunty* (2015) 62 Cal.4th 59, 89 [conc. & dis. opn. of Cantil-Sakauye, C.J.], citing *People v. Brown* (2014) 59 Cal.4th 86, 106; see also, *People v. Duncan* (2008) 160 Cal.App.4th 1014, 1018.)

Here, defendant claims the ultrasound device was taken under a claim of right, although he acknowledges there was conflicting evidence about whether the device was purchased by defendant as a gift to Doe, or whether he expected to be repaid for the item. However, in ruling on defendant's motion for new trial, the court noted that defendant's own testimony conceded the device had been bought

8

for Doe, and that when Doe said she thought it was a gift, defendant replied he was taking it "back," rather than contradict her understanding.

Defendant also claims that insofar as he took the protein powder to hold until Doe returned his power adapter, he did not intend to permanently deprive Doe of the protein powder. However, to constitute robbery, the requisite mental state includes the intent to remove it from the owner's possession for so extended a period of time the owner would be deprived of a major portion of the value or enjoyment of the property. (CALCRIM 1600; *People v. Avery* (2002) 27 Cal.4th 49, 57.) The protein powder was never returned to Doe. The jury was properly instructed on the theory of claim of right, as defendant also acknowledges, and it was also properly instructed on the requisite intent for robbery. However, the jury unanimously rejected these defenses, as indicated by its verdict.

Jurors are free to disbelieve some or all of a defendant's version of events in favor of other conflicting evidence (see *People v. Silva* (2001) 25 Cal.4th 345, 369; *People v. Wharton* (1991) 53 Cal.3d 522, 547), and we are not entitled to substitute our judgment for that of the trier of fact, even if the circumstances might also support a contrary finding. (*People v.Ceja* (1993) 4 Cal.4th 1134, 1139.)

Here, the jury rejected defendant's version of the incident and accepted Doe's version. We are bound to accept it also because it is not physically impossible or inherently improbable. There is substantial evidence to support the robbery conviction.

9

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

MILLER
J.

CODRINGTON
J.

10