Filed 3/19/25  P. v. Carpio CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B333336 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA149810) |
| v. | |
| JOSE RODRIGO CARPIO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sean D. Coen, Judge. Affirmed.

Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jose Rodrigo Carpio (defendant) appeals from the judgment entered on a jury verdict finding him guilty of first degree murder and intentionally discharging a firearm causing great bodily injury. Defendant contends the trial court erred by denying his motion to dismiss pursuant to Penal Code section 1387.1[1] because neither of the People's two prior dismissals of the felony were due solely to excusable neglect. Defendant also argues the court erred by admitting Detective Oscar Villarreal's testimony regarding defendant's recorded statements. We conclude the court did not err in either instance, and we affirm.

## BACKGROUND

**The charges and the jury trial**

Charges were first filed against defendant on May 5, 2017, under the case No. TA143150. Defendant was held to answer and arraigned on information, filed on January 24, 2018. The jury trial was set for April 30, 2019. However, the People indicated they could not proceed due to a breakdown of plea negotiations after defense counsel highlighted evidence on a videotape the prosecutor had not previously noticed. The People dismissed and refiled the case under the case No. TA148820.

Defendant was held to answer and arraigned on information, filed on May 31, 2019. The jury trial was set for August 16, 2019. The People filed a motion to continue trial on August 14, 2019, on the ground material witnesses were unavailable. The trial court denied the motion on August 16, 2019. In denying the motion, the court found the People failed to

---

[1]     All undesignated statutory references are to the Penal Code.

2

properly and with due diligence subpoena the witness, who the People failed to show was material. On August 19, 2019, jury selection began, but the People announced they could not proceed as they thought they properly served the investigating officer who was to testify. The court found they failed to do so. The People also indicated they were awaiting a report regarding a witness interview held by that investigator, who was on vacation. The case was dismissed. The People refiled the case under case No. TA149810.

Defendant was charged with one count of murder (§ 187, subd. (a)), plus the allegation he personally and intentionally discharged a firearm, causing great bodily injury and death (§ 12022.5, subd. (b)–(d)). A jury trial commenced on November 15, 2019. The trial ended in a deadlocked jury, and a mistrial was declared. Another jury trial began on May 22, 2023. Defendant was found guilty of first degree murder, and the allegation defendant personally and intentionally discharged a firearm causing great bodily injury and death was found true.

Defendant was sentenced to 25 years to life for the murder, plus a consecutive term of 25 years to life for the firearm enhancement. Defendant timely appealed.

**The motion to dismiss**

On February 18, 2021, defendant filed a motion to dismiss pursuant to section 995, contending the People were not permitted to file charges against defendant for a third time under section 1387.1, because neither of the prior dismissals were solely due to excusable neglect. Defendant argued the People's prior dismissals were deliberately made for tactical reasons and asserted the prosecution did not act reasonably in its efforts to produce an investigating officer who was on vacation.

3

The People argued excusable neglect in the first dismissal because the prosecution had to investigate the defense's new theory. The People asserted defense counsel brought new information to their attention after the prosecution announced they were ready for trial. Specifically defense counsel informed them defendant planned to call a firearms expert to testify the victim fired a gun at defendant, and the police untruthfully omitted in their reports any mention of the victim having a gun. Given this new information, the prosecution maintained it was obligated to investigate the serious allegation and possible affirmative defense.

As to the second dismissal, the prosecution contends it was due to excusable neglect because Detective Villarreal had been personally served to appear for trial, and there had been contact with him. However, since on the defense motions, the trial was continued several times, and Detective Villarreal was on vacation in Mexico when trial finally commenced. The People represented the detective communicated by text messages he was aware of and was served with the subpoena.

The motion was heard on July 23, 2021. The court denied the motion, finding both dismissals were due to excusable neglect. The court found the first dismissal was due to excusable neglect because the prosecution failed to closely and critically review their evidence. The court rejected the prosecution's assertion there was new evidence and defendant intended to call an undisclosed witness. Rather the court found the prosecution was neglectful in missing portions of a surveillance video showing the victim may have fired a gun.

The trial court found the second dismissal was due to excusable neglect because the prosecution made efforts to produce Detective Villarreal that were consistent with that which

4

had successfully worked for them in the past in their established relationship with the detective. The court found the prosecution reasonably believed they could produce Detective Villarreal for trial and did not act in bad faith.

**Prosecution trial evidence**

Defendant worked at the Jonathan Lewis furniture factory with Elvia Solorzano, German Navarro, and Josue Gonzalez. Defendant was Navarro's and Gonzalez's supervisor and Solorzano was a human resources manager. Navarro had begun demanding money from and threatening Solorzano during their employment. Navarro told Solorzano he murdered and robbed someone in Mexico, was involved with "bad people" there and owed them money. Navarro said he told those people Solorzano owed Navarro money. Navarro told Solorzano those people would come after her and her family if she did not give Navarro the money to pay them back.

Solorzano paid the money Navarro demanded. She had to take out loans, borrow money from friends and coworkers, and gave Navarro almost all of her paychecks. When Solorzano could not pay more, Navarro coerced her into a fraudulent check-cashing scheme involving fictitious employees. Navarro continued to separately demand money from Solorzano and had brandished a gun to intimidate her.

Solorzano and defendant eventually agreed to pay someone to assault Navarro in an effort to stop his threats, but the plan failed to materialize. Defendant later told Solorzano he would attack Navarro himself. They agreed defendant needed a gun in case he had to defend himself against Navarro. Solorzano supplied information to someone who could help him get a gun. Defendant later told Solorzano he obtained a gun and was keeping it in his backpack. Later that evening, defendant told

5

Gonzalez he was meeting Navarro to kill him. Gonzalez knew about Navarro's threats and agreed to go with defendant.

They drove in defendant's car to meet Navarro. Defendant called Navarro and told him he had money for him. When they all arrived at the meeting place, defendant approached Navarro and shot at him about four times while he was still in his car. Navarro drove to the end of an alley, he got out of his vehicle and began running, and defendant chased after him while still shooting. Defendant then ran out of bullets and stopped shooting. During this time, Navarro ran towards defendant but fell down. While Navarro was lying on the ground, defendant reloaded his gun, shot Navarro, and kicked him in the face. Gonzalez watched the incident from defendant's car as it happened. Defendant and Gonzalez then returned to the factory.

Defendant initially said nothing to Solorzano about killing Navarro and acted as though he was not involved in the homicide, leading Solorzano to believe defendant was not involved. But later defendant went into Solorzano's office and told her he killed Navarro. Defendant said he never intended to fire the gun, which accidentally discharged. However he contradicted these statements by indicating his gun jammed, he went back to his car for more bullets, and returned to Navarro to finish the job he started.

A surveillance video of the incident did not clearly show defendant or the license plate of the shooter's car. However, the recorded incident was consistent with Gonzalez's description of the events. Further, the car shown in the video was "strikingly similar" to defendant's car. Defendant and Navarro had exchanged text messages concerning the check-cashing scheme, defendant's desire to get a gun, and meeting up on the day of the shooting. In addition, defendant's phone, when examined for cell

tower usage, contained data showing the phone was in the area of the shooting when Navarro was killed.

Following defendant's arrest, conversations between an undercover agent and defendant while in his jail cell were recorded. Defendant responded, "I didn't think I'd get caught," when asked why he did not flee to Mexico. Defendant was also recorded saying, "[T]hey know it was me."

**Defense trial evidence**

Defendant called his former high school principal who testified that, nine to 10 years ago, defendant was a "good kid," an above average student, very respectful, and never engaged in or had a reputation for violence. The principal testified murder would be inconsistent with defendant's character. Some of defendant's high school teachers also provided testimony consistent with the principal's statements regarding defendant's character and reputation.

Defendant's high school soccer coach testified the shooter in the surveillance video ran in a manner that was inconsistent with how defendant ran. The coach knew defendant's running form because he taught defendant how to run when he played soccer. The coach kept a close relationship with defendant that continued after high school. They continued to play soccer together every Sunday until defendant was arrested. The coach testified defendant was a leader, family-oriented, and was never violent.

Defendant's father testified he had no financial problems and would have given defendant money if he had need. Defendant's father testified, given their relationship, defendant would have asked him for help if he was in any financial trouble and needed money. Defendant's father does not believe defendant

would be involved in a murder for financial reasons because their family never had any issues with money.

## CONTENTIONS ON APPEAL

Defendant asserts two main arguments. First, he contends the trial court erred by denying his motion to dismiss pursuant to section 1387.1 because neither of the People's dismissals were due solely to excusable neglect. Second, he argues the court erred by admitting Detective Villarreal's testimony regarding defendant's recorded statements because it was inadmissible hearsay and improper lay opinion. Defendant asserts it was reasonably probable the result would have been more favorable to defendant if the court excluded the testimony because Detective Villarreal's statements tainted the jury's ability to objectively assess the evidence.

## DISCUSSION

### I.   The trial court did not err in denying defendant's motion to dismiss
#### A.   *Standard of review*

Defendant contends a de novo standard of review should apply to what constitutes excusable neglect because of the decision in *People v. Cromer* (2001) 24 Cal.4th 889. We disagree. *Cromer* applied a de novo standard because of the importance of the Sixth Amendment confrontation right; the fact that determining reasonable diligence there requires applying an objective, constitutionally based legal test; and the fact the trial court has no first-person vantage point as to the prosecutor's efforts to find a witness but is in the same position as an appellate court in applying the objective test. (*Id.* at pp. 896–897, 900–901; see *People v. Bunyard* (2009) 45 Cal.4th 836, 850–851

8

[distinguishing the application of independent review in *Cromer*].) None of these issues are implicated with section 1387.1 here, which requires no application of an objective, constitutionally based legal test. Thus, *Cromer* is not instructive here.

Instead, "[w]e review the trial court's section 1387.1 excusable neglect finding for an abuse of discretion." (*People v. Mason* (2006) 140 Cal.App.4th 1190, 1196 (*Mason*).) "Under an abuse of discretion standard, "'we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious.'"" (*People v. Garcia* (2024) 101 Cal.App.5th 848, 857.) "The abuse of discretion standard is highly deferential." (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) "An abuse of discretion means the trial court acted in an arbitrary, capricious, or absurd manner that resulted in a manifest miscarriage of justice." (*People v. Kocontes* (2022) 86 Cal.App.5th 787, 853.) "[A] "'decision will not be reversed merely because reasonable people might disagree.'"" (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

**B.** ***The trial court reasonably found the first dismissal was solely due to the prosecution's excusable neglect***

Defendant contends the trial court erred in finding the first dismissal resulted from excusable neglect because the prosecution was ready for trial and only dismissed the case to further prepare. Defendant adds the People's refiling was a tactical decision designed to circumvent the court's denial of a continuance. We disagree.

Section 1387.1, subdivision (a) states in relevant part: "Where an offense is a violent felony, as defined in Section 667.5

and the prosecution has had two prior dismissals, as defined in Section 1387, the [P]eople shall be permitted one additional opportunity to refile charges where either of the prior dismissals under Section 1387 were due solely to excusable neglect." "Excusable neglect" is broadly defined to "include[], but is not limited to, error on the part of the court, prosecution, law enforcement agency, or witnesses." (§ 1387.1, subd. (b).) The statute adds, "[i]n no case shall the additional refiling of charges provided under this section be permitted where the conduct of the prosecution amounted to bad faith." (§ 1387.1, subd. (a).)

"The term 'excusable neglect' in section 1387.1 is given the same construction in criminal cases as it has been given in civil cases." (*Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 741.) "'Simply expressed, "[e]xcusable neglect is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances."'" (*People v. Massey* (2000) 79 Cal.App.4th 204, 211 (*Massey*).) "Section 1387.1 is a remedial tool designed to save serious felony prosecutions from improvident loss where there is no bad faith on the part of the prosecution and the inability to prosecute the action is due to excusable neglect." (*Id.* at p. 212.) "As a result, the policy favoring trial on the merits must prevail unless there is clear *inexcusable* neglect." (*People v. Turner* (2023) 97 Cal.App.5th 568, 574 (*Turner*).)

The trial court reasonably found the People's first dismissal resulted from their excusable neglect. While the court rejected the People's position there was new evidence and that defendant intended to call a witness he failed to disclose, it found the prosecution was neglectful in overlooking certain portions of a surveillance video showing the victim may have fired a gun. Defendant asserted this same fact showing the prosecution's

10

neglect in his response brief to the People's opposition to the motion to dismiss. Defendant indicated, when the parties tried to settle the case on the day of trial, he showed two photos taken from the aforesaid portions of the surveillance video. Defendant stressed, however, the prosecution had possession of the surveillance video since the night of the incident. The prosecutor submitted a declaration attesting he never saw a gunshot from the victim in the video. Accordingly, substantial evidence supports the court's finding the prosecution was neglectful in reviewing their evidence.

The trial court concluded the prosecution's neglect was excusable because they simply failed to adequately review the evidence. The court acknowledged the portion of the video the prosecutor missed was not readily apparent as it required a close, critical examination of the evidence. There is no evidence defendant's claim was clearly evident from the face of the surveillance video, suggesting the prosecution acted in bad faith by failing to make the observation. There was also no report of a gun recovered from the victim and no evidence at trial the victim fired a gun at defendant. Hence, the prosecution's neglect falls within the acts or omissions of a reasonably prudent person under the same or similar circumstances (see *Massey, supra*, 79 Cal.App.4th at p. 211), providing substantial evidence that the People did not dismiss the case in bad faith or only for tactical reasons. It was therefore not arbitrary or capricious for the court to have found the prosecution's neglect was excusable.

Defendant also posits the People's first dismissal was not excusable neglect because the prosecution requested and was denied a continuance. This argument, however, presumes the trial court properly denied the People's request for a continuance and considered the same factors under section 1387.1 in so doing.

11

We note a request for a continuance was never formally requested and denied. The court indicated it wanted to at least swear in a panel of jurors, but the issue of trial continuance was never formally addressed. It would be speculative to conclude any informal denial of a trial continuance necessarily meant the People's dismissal was not due to excusable neglect.

C. ***The trial court reasonably found the second dismissal was solely due to the prosecution's excusable neglect***

We note section 1387.1, subdivision (a) only requires either of the prior dismissals to be due to excusable neglect. We have concluded the trial court properly found the first dismissal was solely due to excusable neglect. Thus, we need not consider the second dismissal. Nevertheless, it was reasonable for the court to find the second dismissal also resulted from the prosecution's excusable neglect.

The trial court originally found the People failed to sufficiently show they subpoenaed Detective Villarreal. However, the court ultimately found the dismissal was due to excusable neglect because the prosecution had made efforts they reasonably believed would produce the witness. The prosecutor submitted a declaration attesting he personally served Detective Villarreal to be in court to begin trial. When Detective Villarreal was unavailable on the trial date, the prosecutor texted him to inquire about his absence. Detective Villarreal responded he was aware of and was served with the subpoena but was then in Mexico and would return in about a week. While the prosecutor's efforts to produce the witness may have been informal, the court found the People acted reasonably and in good faith given the good relationship with Detective Villarreal and how he had previously responded. The court ruled the prosecution's actions were

12

neglectful but excusable because they were in accordance with procedures that had worked in the past. Accordingly, we conclude the court acted within its discretion as substantial evidence shows the prosecution's neglect might well have been the acts or omissions of a reasonably prudent person under the same or similar circumstances. (See *Massey, supra*, 79 Cal.App.4th at p. 211.)

The circumstances here are similar to those in *Mason*, where the witness who the prosecution failed to produce had been fully cooperative. (*Mason, supra*, 140 Cal.App.4th at pages 1196–1197.) The witness and the prosecution had kept in contact with one another, even while the defense delayed the trial several times. (*Id.* at p. 1196.) The witness at some point left the country to work on filming a movie but was unaware the trial would commence. (*Ibid.*) The prosecution had every reason to believe the witness would make himself available as he had in the past. (*Id.* at p. 1197.) The *Mason* court found the trial court did not abuse its discretion by finding excusable neglect. (*Ibid.*)

Like *Mason*, defendant here filed multiple motions to continue trial, which was continued several times. When the trial was finally set to commence, Detective Villarreal was out of the country on vacation. The prosecution had an established relationship with Detective Villarreal, who reliably responded when requested. While the People failed to properly subpoena Detective Villarreal, the prosecutor reasonably, and in good faith believed, the informal efforts were sufficient to produce Detective Villarreal based on their past interactions. Thus, the trial court did not abuse its discretion by finding the dismissal was due to excusable neglect.

In short, the trial court acted reasonably within its discretion in denying defendant's motion to dismiss pursuant to

section 1387.1. The evidence does not show the prosecution's neglect was clearly inexcusable. (See *Turner, supra*, 97 Cal.App.5th at p. 574.) In the first dismissal, the prosecution overlooked certain portions of a surveillance video showing the victim may have fired a gun. But the portion of the video missed was not easily apparent, there was no report of a gun recovered from the victim, and the defense never presented evidence of the victim firing a gun at defendant. In the second dismissal, the prosecution failed to subpoena Detective Villarreal. But the case had been continued several times due to defendant's motions and the prosecution reasonably believed their informal efforts would produce Detective Villarreal given their established relationship. Although the prosecution's efforts fell short and they clearly made mistakes, substantial evidence shows they acted reasonably and not in bad faith.

## II. The trial court did not err in admitting Detective Villarreal's testimony regarding defendant's recorded statements

### A. *Standard of review*

"'[A]n apellate [*sic*] court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence.'" (*People v. Thomas* (2021) 64 Cal.App.5th 924, 970.) "This deferential standard of review applies to our review of the trial court's determination . . . whether to receive lay opinion testimony . . . [and] whether proffered evidence constitutes inadmissible hearsay . . . ." (*Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 50–51, citations omitted.) "The trial court's 'discretion is only abused where there is a clear showing [it] exceeded the bounds of reason, all of the circumstances being considered.'" (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 640.)

**B.** *Detective Villarreal's testimony was not inadmissible hearsay*

Defendant contends the trial court erred in admitting Detective Villarreal's testimony regarding defendant's recorded statements because it is inadmissible hearsay. Defendant argues Detective Villarreal lacked personal knowledge of defendant's statements and only repeated what he heard on the recording. We disagree.

"'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "'Hearsay . . . is generally inadmissible.'" (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 764; see Evid. Code § 1200, subd. (b).) Under Evidence Code section 1220, however, "[e]vidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

"Evidence Code section 1220 makes a 'statement' of a party an exception to the general rule forbidding hearsay evidence when the statement is offered against that party." (*People v. Rodriguez* (2014) 58 Cal.4th 587, 637.) This exception is not limited to admissions—it "applies to all statements of the party against whom they are offered." (*Ibid.*)

Detective Villarreal's testimony falls within the exception to the hearsay rule under Evidence Code section 1220. A recording of a conversation between defendant and an undercover agent was played in open court during the prosecution's direct examination of Detective Villarreal. Afterwards, Detective Villarreal testified defendant stated in the recording to the

15

undercover agent, "They know it was me, they know." Detective Villarreal also testified defendant responded, "I didn't think I'd get caught," when the undercover agent asked why he did not flee to Mexico. Thus, Detective Villarreal simply testified to what defendant stated in the recording. Since Detective Villarreal's testimony was evidence of defendant's own statements, it fell squarely within Evidence Code section 1220 and was thus admissible.

Defendant cites *People v. Wimberly* (1992) 5 Cal.App.4th 439 to support his argument. Defendant's reliance on *Wimberly* is misplaced. In *Wimberly*, a detective who investigated the burglary the defendant was charged with testified to statements made by the manager of the apartment where the victim lived. (*Id*. at pp. 442, 445.) The manager made the statements to another officer, who included them in his crime report. (*Ibid*.) The *Wimberly* court concluded the statements were inadmissible hearsay (*id*. at p. 447), but the decision there is not instructive for the circumstances here. The manager who gave the statements in *Wimberly* was not a party to the case, and Evidence Code section 1220 was never at issue there. (See *id*. at pp. 442, 445.) In contrast, the statements at issue here were defendant's own words. Accordingly, *Wimberly* is inapposite to the analysis here.

Defendant also cites *People v. Sundlee* (1977) 70 Cal.App.3d 477 (*Sundlee*), but *Sundlee* is not dispositive here for the same reasons. In *Sundlee*, 13 employees of the State Division of Forestry formed a surveillance team to watch the defendant, a suspected arsonist. (*Id*. at p. 481.) They recorded their communications with each other, which were played to the jury in open court. (*Id*. at pp. 481–482.) None of these witnesses were parties to the case, so Evidence Code section 1220 was not at

16

issue. (*Id*. at pp. 482–483.) Accordingly, *Sundlee* is also not instructive here.

**C.** ***Defendant forfeited arguments that Detective Villarreal's testimony was improper lay opinion***

In addition, defendant maintains the trial court erred in admitting Detective Villarreal's testimony because it was improper lay opinion. However, "the general rule [is] that trial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal." (*People v. Dykes* (2009) 46 Cal.4th 731, 756.) "What is important is that the objection fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling." (*People v. Partida* (2005) 37 Cal.4th 428, 435 (*Partida*).) An objecting party "may not argue on appeal that the court should have excluded the evidence for a reason different from the one stated at trial. A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*Ibid*.)

"The objection requirement is necessary in criminal cases because a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal."'" (*Partida, supra*, 37 Cal.4th at p. 434.) "The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the

offer of proof, or take other steps designed to minimize the prospect of reversal." (*People v. Morris* (1991) 53 Cal.3d 152, 187–188, disapproved of on another ground by *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.)

After Detective Villarreal testified regarding defendant's recorded statements, defense counsel objected on the ground of speculation. Defense counsel provided no explanation he was objecting on the ground the testimony was improper lay opinion. The trial court therefore had no fair notice the issue it was being called upon to decide was whether Detective Villarreal's testimony was inadmissible lay opinion. Speculation and lay opinion objections each challenges different aspects of a witness's testimony. "'[A]n examiner's question asking a lay witness to testify to facts that the witness has not personally observed, or to state an opinion not based on his or her own observations, calls for speculation and conjecture by the witness and is prohibited by' Evidence Code sections 702 and 800." (*People v. Rodriguez* (2014) 58 Cal.4th 587, 631.) In contrast, "'[a] lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of his testimony.'" (*People v. Bradley* (2012) 208 Cal.App.4th 64, 83 (*Bradley*); see Evid. Code, § 800.)

Detective Villarreal testified regarding defendant's recorded statements immediately after the recording was played in open court. Hence, Detective Villarreal's testimony was clearly not speculation as it was based on a recording he had just heard and personally observed. The trial court therefore properly overruled defendant's objection. The court could not be expected to have known defendant was also challenging the testimony on grounds of improper lay opinion. While the rule concerning lay opinion requires a witness's opinion to be based on their own

18

perception, it further requires the opinion to be rationally connected thereto and helpful to understanding the testimony. (See *Bradley*, *supra*, 208 Cal.App.4th at p. 83.) Nothing in the trial record suggests Detective Villarreal's testimony failed to meet either of the latter two requirements of admitting lay opinion. Accordingly, defendant forfeited this issue on appeal.

**D.** **_Any error in admitting Detective Villarreal's testimony was not prejudicial_**

Even assuming arguendo the trial court erred in admitting Detective Villarreal's testimony, the error was not prejudicial because it is not reasonably probable the result would have been more favorable to defendant if the court excluded the testimony.[2]

Immediately after the trial court overruled defendant's objection to Detective Villarreal's testimony, it specifically instructed the jury the recording of defendant's statements was the actual evidence. The court informed the jurors they were to form their own judgments based on the recording, indicating the transcript provided was merely to assist them. The recording was played for and made accessible for the jurors. The jurors therefore had both the opportunity and awareness they were to independently and individually determine what defendant stated

---

[2]     Defendant also argues this court should conclude defense counsel rendered ineffective assistance if it found defendant forfeited an objection. However, ineffective assistance of counsel requires there be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*People v. Dickey* (2005) 35 Cal.4th 884, 907.) Because we conclude here it was not reasonably probable the result would have been more favorable to defendant if the court excluded Detective Villarreal's testimony, defendant also fails to show there was ineffective assistance of counsel.

19

in the recording. Accordingly, we disagree Detective Villarreal's testimony "usurped" the jury's role as an independent factfinder and tainted its ability to assess the evidence as defendant asserts. Even if the testimony was excluded, the jury had access to the recording and a transcript that was consistent with Detective Villarreal's statements.

Further, one accomplice to the murder saw the incident and identified defendant as the shooter. Another accomplice testified defendant confessed to committing the homicide the next day. Defendant argues both accomplices had credibility issues given their plea bargains. However, the prosecution did not only rely on the credibility of the accomplices, as their testimonies were corroborated by objective evidence and data. There was surveillance video of the shooting. Though the video did not have a clear picture of defendant, the recorded events were consistent with Gonzalez's description of the incident. And while the license plate of the shooter's car was not clearly visible in the video, the car was "strikingly similar" to defendant's car.

In addition, cell tower usage data showed defendant's phone was at the location of the shooting at the time Navarro was killed. Text message data showed defendant and Navarro exchanged texts concerning the check-cashing scheme, defendant's desire to get a gun, and them meeting up on the day of the shooting. While defendant offered alternative theories, he could not refute this objective data and physical evidence implicating his guilt.

In sum, the trial court did not abuse its discretion in admitting Detective Villarreal's testimony. The testimony concerned defendant's own statements was not inadmissible hearsay under Evidence Code section 1220. Further, the defense forfeited any lay opinion objection because they never raised it or

gave the court fair notice of the issue. And even if there was error in admitting the testimony, it was not prejudicial. After overruling defendant's objection, the court specifically instructed the jurors the recording was the actual evidence and they were to determine themselves what defendant said, with the transcript only serving to assist them. The prosecution also presented other unrefuted objective data and forensic evidence that corroborated the accomplices' testimonies, strongly implicating defendant's guilt.

## DISPOSITION

The judgment is affirmed.

_____
CHAVEZ, J.

We concur:

_____
LUI, P. J.

_____
RICHARDSON, J.