Filed 8/17/16  P. v. Avatongo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061475 |
| v. | (Super.Ct.No. RIF1203955) |
| UHILA WALTER AVATONGO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant, Uhila Avatongo, is serving eight years eight months in state prison after a jury convicted him of nine fraud, theft and burglary felonies against three victims. Defendant made it an on-going practice, over numerous years, to approach homeowners, pretend to have a contractor's license, and induce his victims to enter into a contract and pay him money to perform landscaping work. In this case, defendant abandoned construction jobs at three residences after collecting payment for the work. Defendant challenges the sufficiency of the evidence on the burglary counts and one of the grand theft counts, and argues the trial court erred under Evidence Code section 1101, subdivision (b), when it admitted evidence of alleged prior bad acts to prove fraudulent intent. As discussed below, we reject these contentions and affirm.

## FACTS AND PROCEDURE

On May 12, 2014, the People filed an amended, 12-count complaint, naming three separate victims, and alleging defendant committed three counts of fraudulent use of a contractor's license number (Bus. & Prof. Code, § 7027.3), three counts of grand theft (Pen. Code, § 487, subd. (a)), three counts of first degree burglary (Pen. Code, § 459), and three misdemeanor counts of working as an unlicensed contractor (Bus. & Prof. Code, § 7028, subd. (a)).

At trial, the People introduced testimony from four witnesses that is key to resolving the issues raised in this appeal.

Marsha Thomas testified that she lived at 34593 Venturi Avenue in Beaumont, in a community of newly built homes. In March 2011, defendant had already completed some landscaping jobs in the neighborhood and was knocking on doors to get new

2

business.  The homeowner's association required residents to landscape their yards within one year of moving in.  Defendant knocked on Thomas' door and offered to show her pictures of work he had completed for other residents in the area.  Thomas invited defendant into her home.  Defendant verbally told Thomas that he was a licensed contractor and gave her a business card.  The business card did not have a contractor's license number on it.  At some point, defendant also gave Thomas a paper that said, "Contractor State License Board, active license" and "All American General" and had defendant's name on it.  Based on the two different business cards and the paper described above, Thomas believed defendant was a licensed contractor.  Thomas gave defendant a check that day as a deposit to start the job.  Defendant also contracted to do work in Thomas's sister's yard.  Defendant started both projects the same day and successfully completed the work in the sister's yard, with no complaints from the sister.  Thomas paid defendant a total of $3,000.  After Thomas wrote the third and final check, defendant completed no additional work in her yard.  Thomas called defendant at least 20 times and received only one return phone call, but defendant completed no additional work.  Defendant left the project unfinished, and Thomas paid another contractor $15,000 to finish the work.

Patrick Hall testified that he lived at 34748 Woods Place in Riverside County.  Defendant was going door-to-door in Hall's neighborhood of new homes.  Hall invited defendant into his home and sit at his kitchen table, along with Hall's wife.  The three of them went over the details of the work defendant was going to perform in their yard.  At the kitchen table, defendant told Hall that he was a licensed contractor.  Hall testified that

this was very important to him, and that he would not have hired defendant otherwise. Defendant stated that he was working under his own contractor's license and provided Hall with a pocket license, which Hall photocopied. The photocopy was introduced at trial. Hall paid defendant a total of $7,000. After receiving the last check, defendant abandoned the job unfinished. Hall paid a licensed contractor $25,000 to complete the work.

Mark Spencer testified that he lived at 34610 Venturi Avenue in Beaumont. In January 2011, defendant knocked on his door. Defendant told Spencer he did landscaping and concrete work. Defendant entered the home to look at the backyard and discuss what work Spencer wanted completed. Defendant told Spencer that he was working for his dad, and that his dad had a contractor's license. Defendant handed Spencer a business card with a license number on it. A month or two later, defendant told Spencer he had obtained his own contractor's license and his own business, and handed him another business card with a license number and the name All American Concrete on it. Further, Spencer testified that he and defendant discussed defendant's license status on a number of occasions. Defendant and Spencer entered into a contract that first day, and Spencer wrote defendant a check for $5,000. Spencer testified that defendant led him to believe that defendant was a licensed contractor. Spencer testified that he would not have hired defendant if he had known defendant was not licensed. Defendant failed to complete the work as agreed, despite receiving $25,000 in total payments. Much of the work that was completed was not up to code, as confirmed by a City of Beaumont's building inspector. Spencer hired a licensed contractor to finish his

4

yard, and had to pay $10,000 to rip out, repair and complete the work defendant had started.

Elisia Kemp, an investigator with the Contractors State License Board (CSLB), testified that defendant had never had a contractor's license issued to him. From 1996 to 2000, defendant had a business partner with a valid license and defendant legally worked under that license. In 2000, the CSLB began to get complaints about defendant. There were a total of 48 complaints filed against defendant between 2000 and 2014 for working as a contractor without a license. Kemp testified that the contractor's license number defendant had given Mark Spencer did not belong to defendant, but belonged to someone else.

On May 15, 2014, a jury convicted defendant of all counts.

On June 30, 2014, the trial court sentenced defendant to a total term of eight years eight months in state prison.

This appeal followed.

## DISCUSSION

1.    *Sufficiency of the Evidence as to the Three Burglaries*

As to each of the three victims, the jury convicted defendant of one count of residential burglary and one count of grand theft. Defendant asserts each of the burglary convictions must be reversed because the People presented insufficient evidence to establish defendant harbored the intent to commit theft or any felony at the time he entered the victims' homes.

5

In reviewing a sufficiency of evidence claim, our role is limited. We determine whether, on review of the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.) We must review the whole record, not isolated bits taken out of context, "in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence to determine whether the record discloses substantial evidence. [Citations.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.) Reversal is unwarranted unless it appears """"that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].""""" (*People v. Mason* (2006) 140 Cal.App.4th 1190, 1199.) If the circumstances reasonably support the findings of the jury, even if the evidence would also support a contrary finding, reversal is improper. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139.)

Burglary is the entry of certain structures as listed in the statute with intent to commit a theft or any felony. (Pen. Code, § 459.) The burglary statute does not require that the theft or other felony take place "therein"—i.e., in the structure entered. (*People v. Wright* (1962) 206 Cal.App.2d 184, 188.) The intended crime need not be successful in the space entered, or at all, for there to have been a burglary. (*People v. Elder* (1969) 274 Cal.App.2d 381, 398.) For an entry to constitute a burglary, the burglar's entry must facilitate the intended crime, and the entry must have a close connection to the crime that defendant intended to commit at the time of the entry. (*People v. Griffin* (2001) 90 Cal.App.4th 741, 749.) Facilitation is satisfied if the entry makes the successful

completion of the crime easier or less risky for him. (*People v. Kwok*, *supra*, 63 Cal.App.4th at p. 1248.) "An intent to commit theft by a false pretense or a false promise without the intent to perform will support a burglary conviction." (*People v. Parson* (2008) 44 Cal.4th 332, 354.)

The judge instructed the jury that defendant committed burglary if, when he entered any of the homes, "he intended to commit theft or a violation of Business & Professions Code section 7027.3." This is in substance CALCRIM No. 1700. The judge also instructed the jury that the evidence required to prove a violation of Business and Professions Code section 7027.3 must show: "1. An unlicensed person willfully and intentionally used another's valid contractor's license number; and [¶] 2. The unlicensed person did so with the intent to defraud." This instruction reflects the requirements of the statute. (Bus. & Prof. Code, § 7027.3.)

Here, substantial evidence supports the jury's conclusion that defendant entered each of the three victims' homes with the intent to violate Business and Professions Code section 7027.3. In each case, defendant entered their home and gave another person's contractor's license number as a means of obtaining a construction contract and receiving payment. Whether defendant at each of those times had formed the intent to not finish the work is immaterial—what is important is that the evidence shows he entered these homes with the demonstrated intent to use another contractor's license number to persuade each homeowner to sign a contract and pay him money. Defendant's entry into each home facilitated, and was closely the crime, by allowing defendant to meet with the homeowner, view their yard, discuss the work desired and payment required, put that into

writing in a contract, and to persuade each homeowner that he was licensed and qualified to do the work. No showing whatsoever is required that defendant intended at the time he entered each home to abandon the project after collecting payment. Substantial evidence supports each of the three burglary convictions.

2. *Sufficiency of the Evidence as to the Theft from Mark Spencer*

Defendant briefly asserts he could not be convicted of theft as to victim Mark Spencer because an investigating police officer testified at trial that Spencer stated defendant completed all the work for which he was contracted.

Additional relevant facts include: The work described in the written contract between Mark Spencer and the defendant was: (1) a patio deck for the second floor and a sliding glass door from the deck to the master bedroom; (2) a stamped concrete patio slab on the ground floor at the rear of the house; (3) a sidewalk from the rear patio slab to the driveway; (4) a 69-inch planter wall (about two to three feet high) following next to the sidewalk, along the side fence; (5) drainage from the back patio and sidewalks; (6) a barbecue island, including a refrigerator and a lattice covering; (7) backyard sod and sprinkler system; and (8) a concrete border by the back fence. The amount of that contract was $23,000. Spencer's wife wanted some additional work added—alterations to the second floor patio deck and the barbecue island—for which Spencer and defendant agreed the payment would be an additional $12,000. Spencer testified that he asked several times for a written contract, but never received one.

Defendant bases his argument on the following testimony at trial: First, defendant asserts that page 39 of the reporter's transcript contains testimony that he "finished most

8

of the work by January 28, 2011." However, that page contains no reference to January 28 or to what portion of the work was completed. Second, defendant asserts that "Spencer later told [the investigating police officer] that appellant had done *everything* agreed to in the original contract," citing to page 304 of the reporter's transcript. The exact testimony of the officer is as follows: "When I asked [Spencer] about the barbecue pit not being on the contract, he explained everything on the contract was completed. He then began telling me other things he wanted done that were not." However, Mark Spencer testified that defendant did not complete the work in the original contract, nor the additional work for which the parties orally contracted. He described the work that was left unfinished when he and his wife left for a six-week vacation, and which defendant never finished—"There was no top on the barbecue island. The balcony was not completed. There was no sliding door put in. All that stone work that he had done down the other side of the house was all uneven. You could have broke a leg back there. The sod that he had put down, he didn't level anything. You could have broke an ankle out there. [¶] There's other things, but I just—I don't remember off the top of my head right now." Spencer also testified that defendant failed to put in a drain under the ground floor patio slab. Mrs. Spencer testified that defendant promised them he would finished the construction project by the time they returned from their six-week vacation, but he did not.

Here, the jury was the trier of fact, and as such was entitled to credit the specific testimony of Mark Spencer and his wife about what they personally witnessed about the construction on their property over the second-person testimony of the investigating

9

officer about a general statement Mark Spencer made to him about the same issue. For this reason, sufficient evidence supports the jury's verdict on this theft count.

3. *Admission of Prior Bad Acts Under Evidence Code Section 1101, Subdivision (b)*

Before CSLB investigator Elisia Kemp testified, the People moved to admit evidence of prior complaints against defendant as circumstantial evidence under Evidence Code section 1101, subdivision (b). The purpose was to prove defendant's intent, motive, overall plan, and absence of mistake regarding his licensing status. The court found the evidence to be relevant under Evidence Code section 1101, subdivision (b), to the central issues of defendant's intent and absence of mistake. The court then found under Evidence Code section 352 that the evidence's probative value outweighed its prejudicial effect, the evidence would not consume an undue amount of time, and it would not confuse the jury. The court granted the People's motion to admit Kemp's testimony.

Defendant argues the court erred in the above analysis and abused its discretion. Specifically, he points out that some of the 48 complaints were up to 10 years old and that there is no way to know whether the complaints were similar to the current crimes charged because the prosecution failed to provide any details.

Evidence Code section 1101, subdivision (b), provides, in relevant part: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .)." "Evidence

10

of other crimes is not admissible merely to show criminal propensity, but it may be admitted if relevant to show a material fact such as intent." (*People v. Jones* (2011) 51 Cal.4th 346, 371.)

Absence of mistake or accident is related to both knowledge and intent. A "knowledge element is akin to absence of mistake." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 242.) Further, absence of mistake can rebut a claim of innocent intent. (*Ibid*.) "'To be admissible to show intent, "the prior conduct and the charged offense need only be sufficiently similar to support the inference that defendant probably harbored the same intent in each instance."'" (*People v. Davis* (2009) 46 Cal.4th 539, 602.)

Here, defendant does not establish that the age of the oldest complaints makes them irrelevant. Other than asserting that "some of the uncharged offenses were 10 years old," he does not explain how this makes them irrelevant to the issues of intent and lack of mistake. Further, defendant did not just violate that code section in 2000 and then not again until 2011 or 2014. Rather, he appears to have made a long and consistent practice of contracting without a license, which is why the complaints were introduced into evidence. Defendant has not established that the oldest complaints are too remote in time to be admissible under Evidence Code section 1101, subdivision (b).

Defendant also asserts that "it cannot be said whether the complaints were 'similar' to those lodged by the present victims because the prosecution failed to provide any details of those complaints." The prosecution presented testimony from the CSLB

11

investigator that the complaints were for contracting without a license, which is the factual basis for the charges here. Therefore, the 48 complaints were relevant.

Finally, defendant argues the introduction of the 48 complaints was prejudicial because of the sheer number of complaints and the doubt it created about defendant's honesty.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) For purposes of Evidence Code section 352, prejudice means "'evidence that uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues.'" (*People v. Heard* (2003) 31 Cal.4th 946, 976.) "We review a challenge to a trial court's choice to admit or exclude evidence under section 352 for abuse of discretion." (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.) Here, the evidence has great probative value—it shows defendant intended to defraud the homeowners by representing that he had a valid contractor's license and did not do it by mistake, believing he had a valid license, because he had done it so many times before over a long period of time. Further, the facts of the 48 complaints were no more inflammatory than the facts of the charges in this case. (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 405.) The trial court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.

12

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P.J.

We concur:

HOLLENHORST
J.

MILLER
J.