Filed 10/27/20  P. v. Brown CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B297949 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA139595) |
| v. | |
| JUSTIN DIJON BROWN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa A. Magno, Judge.  Affirmed as modified.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, David W. Williams, Deputy Attorney General, for Plaintiff and Respondent.

_____

On April 7, 2017, the jury found defendant and appellant Justin Dijon Brown guilty of felon in possession of a firearm in violation of Penal Code section 29800, subdivision (a)(1)[1] in count 2, and found that the offense was committed for the benefit of a criminal street gang under section 186.22, subdivision (b)(1)(A).

The trial court declared a mistrial as to count 1 (§ 211 [robbery]), in which it was also alleged that Brown personally used a firearm (§ 12022.53, subd. (b)), and that the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).

In a bifurcated proceeding, the trial court found true the allegations that Brown had served three prior prison terms within the meaning of section 667.5, subdivision (b), had been convicted of a serious felony within the meaning of section 667, subdivision (a)(1), and had been convicted of a serious or violent felony within the meaning of the three strikes law (§§ 667, subds. (b)–(i), 1170, subds. (a)–(d)).

The trial court sentenced Brown to 6 years in prison in count 2 (the upper term of 3 years, doubled pursuant to the three strikes law), a consecutive term of 4 years for the gang

_____

[1] All further references are to the Penal Code unless otherwise specified.

2

enhancement, and two consecutive 1-year terms for the prior prison term enhancements, for a total sentence of 12 years. The court dismissed the robbery count after the prosecution indicated that it did not intend to pursue a conviction in light of the sentence imposed.

Brown appealed, contending, as relevant here, that the trial court committed constitutional error by failing to give a unanimity instruction in count 2.

On August 24, 2018, we held that the trial court erred in failing to instruct the jury that it must unanimously agree as to which of two incidents formed the basis of its finding that Brown was in possession of a firearm before it could find him guilty, and reversed the judgment. (*People v. Brown* (Aug. 24, 2018, B282871) [nonpub. opn.].)[2]

In 2019, Brown was re-tried. The jury found Brown guilty of one count of second degree robbery (§ 211 [count 1]) and one count of felon in possession of a firearm (§ 29800, subd. (a)(1) [count 2]). The jury found true the allegation that Brown personally used a firearm (§ 12022.53, subd. (b)) in count 1, and that the crime was committed for the benefit of a criminal street gang as to both counts (§ 186.22, subds. (b)(1)(A) & (C)).

In a bifurcated proceeding, the trial court found true the allegations that Brown had been convicted of two serious or violent felonies within the meaning of the three strikes law (§§ 667, subds. (b)–(i), 1170, subds. (a)–(d)), had been

_____

[2] We take judicial notice of the record and our prior unpublished opinion in case No. B282871.

convicted of one serious felony within the meaning of section 667, subdivision (a), and had served two prior prison terms (§ 667.5, subd. (b)).

The trial court sentenced Brown to 21 years in prison. In count 1, Brown was sentenced to the middle term of 3 years, doubled to 6 years pursuant to the three strikes law, plus 10 years for the firearm enhancement (§ 12022.53, subd. (b)). The court imposed a concurrent sentence of 7 years in count 2, comprised of the middle term of 2 years, doubled pursuant to the three strikes law, plus the middle term of 3 years for the gang enhancement (§ 186.22, subd. (b)(1)(A)). The court imposed a sentence of 5 years for the serious felony enhancement (§ 667, subd. (a)), and imposed and stayed two 1-year prior prison term enhancements (§ 667.5, subd. (b)).

Brown contends that the judgment must be reversed because the trial court erred when it allowed the prosecution to re-file dismissed charges a third time, in violation of his constitutional right to a speedy trial. He asserts that the trial court abused its discretion in finding "excusable neglect" on the part of the prosecution and allowing the case to proceed.

Alternatively, Brown contends that he was deprived of his right to a fair trial because the trial court did not bifurcate the portion of the trial related to the gang enhancements, and admitted evidence of his past gang crimes. He further contends that he was prejudiced by cumulative error, and that the two 1-year prior prison term

4

enhancements under 667.5, subdivision (b), must be stricken in light of recently enacted Senate Bill No. 136 (Senate Bill 136) (Sen. Bill No. 136 (2019–2020 Reg. Sess.)), which modified subdivision (b), such that the enhancement now applies only when the prior conviction was for a sexually violent felony.

The People agree that the section 667.5, subdivision (b) enhancements must be stricken, but otherwise contest Brown's contentions.

We order the abstract of judgment modified to reflect that the two 1-year prior prison term enhancements imposed under section 667.5, subdivision (b), are stricken, but otherwise affirm the judgment.

## FACTS

### *Prosecution*

#### <u>The Robbery</u>

The victim, Phillip Clark, was a security officer who made money on the side buying and re-selling cell phones. Clark owned a firearm and had been trained to operate firearms.

On March 8, 2016, Clark made arrangements to purchase phones from former codefendant Barry Denman at Denman's home at approximately 10:30 p.m. Clark's wife was with him in the car, and had fallen asleep.

Clark called Denman when he arrived.  He exited the car, but left it running.  Denman came out of the house carrying an empty plastic bag.  He told Clark his "homie" must have taken the phones.  Clark said it was no problem and told Denman to let him know when he had more phones available.  Denman pulled out a gun and told Clark to give him his money.  He pointed the gun at Clark's head, holding it no more than six inches away.  When Clark moved his head away from the gun, Denman hit him with it.  Clark tried to get back in his car.  Denman reached over Clark, turned off the ignition, and took the car keys.

Clark saw a person he later identified as Brown approaching from across the street.  Brown pointed a gun at Clark from about 11 or 12 feet away.  He ordered Clark to get on his knees and strip.  Denman continued to try to get into the car.  Clark got out of the car and kneeled.  Brown said to Denman, "I want to pop him.  I want to pop him." Clark was afraid that Brown would shoot him.  Denman responded, "Nah, Hawk.  We got what we want.  Let's go." Denman had Clark's wallet, containing $1,246, which he had taken from the car's center console.  Denman threw Clark's keys into the car, and he and Brown fled the scene on foot. Clark drove away and called the police.  The deputies arrived soon thereafter and searched for the robbers, but they were unable to locate them.

Based on his own experience purchasing guns, Clark believed that both of the suspects' guns were Glock .40 or .45 caliber.

Clark thought that Denman was between 20 and 25 years old, about 5 feet, 8 inches tall, and weighed approximately 180 to 200.  Denman was wearing a black hoodie and jeans.

Brown was a black male between 20 and 25 years old, also wearing a black hoodie and jeans, and was between 5 feet, 10 inches tall, and 6 feet, 1 inch tall.  He weighed about 200 to 240 pounds.[3]  Clark was within 11 to 12 feet of Brown during the encounter, and looked at Brown's face for between 2 and 4 minutes.  Clark was on his knees or seated in the car the entire time that he could see Brown.

**The Investigation**

Los Angeles County Sheriff's Department Detective Edgar Solano was assigned to Operation Safe Streets and investigated crimes committed by gangs, including the Park

---

[3] When Clark initially spoke with law enforcement, he described Brown as a Black male, age 20 to 25 years old, who was 5 feet, 9 inches tall and weighed between 210 and 240 pounds.  When Clark later saw Brown in court, he believed that Brown was approximately 6 feet, 3 inches tall.  Clark believed that he initially misjudged Brown's height because he was on his knees the whole time that he looked at Brown.  When the men ran from the scene, Clark could tell that Brown was taller than Denman, but could not estimate his height more accurately.  Although it was night when the incident occurred, there was a streetlight, so Clark could see Brown clearly.

Village Compton Crips (PVCC) and Santana Blocc Crips. Detective Solano was assigned to the instant case on March 9, 2016, because it was within the gang territory that he covered. The address 626 West Cypress Street "jumped out" at him because he had previously investigated a shooting there in 2012. The residence was Denman's home, and Denman was the victim in the 2012 incident.[4] There had also been a more recent incident at the same address in December of 2015.

Detective Solano took note of the earlier incidents, looked over the reports for the instant case and the prior cases, and reviewed the description of the suspects. The detective placed Denman in one of the two photographic six packs because the incident took place at his address. He generated the photographic six pack for the second suspect based on the 2015 incident. Three people had been involved, including Denman. Of the other two persons involved, Brown most closely fit the description of the suspect, so Detective Solano placed him in the six pack line-up. The other individual who was involved in the 2015 incident was lighter in weight. Detective Solano also based his decision to put Brown in the line-up on the fact that Brown lived just up the block and the suspects ran in that direction.

The detective interviewed Clark on March 10, 2016. After the interview, he admonished Clark regarding identification and showed him the two photographic line-

_____

[4] Denman admitted to Detective Solano that he was a PVCC gang member in 2012.

8

ups. Clark identified both Denman and Brown immediately. He identified Denman as the person who initiated the robbery, hit him in the head with a gun, and stole his wallet. He identified Brown as the person who made him kneel and threatened to "pop" him. Clark was absolutely certain that the individuals who he identified were the men who robbed him.

The gang surveillance unit located and detained Denman on March 17, 2016, and Detective Solano interviewed him. Denman denied involvement in the March 8 incident and denied that he was a gang member.

Detective Solano obtained a search warrant for Brown's home at 728 South Anzac Circle, "right up the street" from Denman's home. Both Denman and Brown lived within PVCC territory. Law enforcement searched Brown's residence on March 18, 2016. In particular, they were looking for a .40 or .45 caliber semi-automatic firearm based on Clark's description, or any of the items that had been taken from Clark in the robbery. Detective Solano recovered a fully-loaded .40 caliber weapon in an upstairs bedroom. Los Angeles County Sheriff's Department Detective Scott Lawler was also involved in the search, and found a notebook with the word "Hawk" in it in Brown's bedroom on the first floor. The notebook contained a traffic violation citation with Brown's name on it. There was also .40 caliber ammunition in Brown's bedroom closet. Detective Lawler identified numerous PVCC references in the

9

notebook.  The deputies did not find any of Clark's personal property at the residence.

Brown's cousin, Christopher Metcalf, lived at the same address.  Detective Solano informed Metcalf the firearm was stolen, and Metcalf claimed that it belonged to him.  Metcalf was arrested and later convicted of receiving stolen property for possession of the gun.

Detective Solano obtained a warrant, and Brown was arrested.  Detective Solano photographed tattoos on Brown's arm.  One photograph depicted the letters "VL" tattooed on Brown's wrist.  "VL" stands for Village Life, which is associated with a criminal street gang.

Detective Lawler retrieved information relating to Brown from the internet, including a photograph of Brown with "Blacc Hawk Brown" in the upper left-hand corner.  The detective found the photograph relevant for multiple reasons, including that "Blacc" was mis-spelled to include two "c's" for Compton Crips.  Brown was wearing a Saint Louis Cardinals hat, and held his fingers to form the letters "VL," for Village Life.

### Expert Testimony on PVCC

Detective Lawler testified as an expert on PVCC for the prosecution.  He had been assigned to a gang unit for six years.  One of the gangs he was assigned to was PVCC.  He had contact with PVCC members during arrests, but also spoke with them on a consensual basis.

Detective Lawler testified regarding the borders of PVCC territory, which included the Wilmington Arms Complex or Wilmington Arms Compton Crip (WACC) located at 700 West Laurel Street. He also testified regarding PVCC members' dress. PVCC gang members wear San Diego Padres memorabilia, and Saint Louis memorabilia for the Rams or the Cardinals, because the STL stands for Laurel Street, which is the WACC address. They also wear Louis Vitton brand clothing with "LV" written on it, which stands for "Village Life." PVCC is a rival of the Santana Blocc Crips, and sometimes uses the initials "SK" for "Santa Blocc killer." Detective Lawler testified to two predicate offenses committed by PVCC members. The primary criminal activities of PVCC include vehicle theft, narcotics sales, robberies, shootings, gun possessions, and murder.

Detective Lawler testified regarding the significance of "snitching" in gang culture. "Snitching" is "telling on somebody, testifying on somebody, providing law enforcement with information." Snitching is unacceptable in gang culture. A snitch cannot be trusted. Gang members commit crimes together and have to be able to rely on each other. Someone who snitches is "no good."

Detective Lawler testified that, given hypothetical facts mirroring the facts of the instant case, in his opinion, the crime would be committed for the benefit of, and in association with, a criminal street gang. Two members of the same criminal gang operating in concert establishes "association." In Detective Lawler's experience, the vast

majority of gang-related crimes were committed by more than one member of the same gang. Gang members commit crimes together for protection, but also so that they can corroborate each other's misdeeds and increase their reputations within the gang. The acts benefit the gang by instilling fear in the community, which prevents citizens from reporting crimes or testifying, and allows the gang to operate with impunity. There is also monetary gain as a result of many crimes, which aids in recruiting younger people who view the commission of crimes as easy money.

### *Defense*

Denman, who was incarcerated at the time, testified on Brown's behalf. Denman had pleaded guilty to the robbery in exchange for an eight-year sentence. He was the person who had identified himself to Clark as "Chris." Another individual assisted Denman in the crime, but Denman did not know that person's name. The other person was not a gang member. Brown did not participate in the robbery. Denman and Brown had been friends since childhood.

Denman denied that he was a gang member. He had been arrested for possessing a shotgun on December 6, 2015. Brown was with him at the time. To his knowledge, no one was shot in front of his house on December 6, 2015.

Denman has never called the police and would never "snitch" on anyone.

Brown's mother and football coach testified that Blacc Hawk was Brown's nickname from football. Brown's mother also testified that Brown had a tattoo with her name, her daughters' names, her granddaughter's name, and the letters "L" and "V", which stand for love.

## DISCUSSION

### *Two-Dismissal Rule*

Brown first contends that the prosecution violated the "two-dismissal rule" articulated in section 1387, which bars further prosecution of a charge that has been dismissed twice. He argues that the exception to this bar under section 1387.1, which permits another prosecution upon a showing of excusable neglect, is inapplicable here, and that the charges must be dismissed.

The People respond that the two-dismissal rule does not apply, because counts are considered individually under section 1387, and in this case each count was dismissed only once. Alternatively, the People argue that the "excusable neglect" exception applies in this case.

We agree with the People that each charge was dismissed a single time, such that the two-dismissal rule was never implicated.

**Legal Principles**

Subject to certain exceptions, section 1387, subdivision (a) provides, in pertinent part: "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or if it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995, or if it is a misdemeanor not charged together with a felony . . . ." "This is commonly called in felony cases the two dismissal rule." (*People v. Mason* (2006) 140 Cal.App.4th 1190, 1195 (*Mason*).) In assessing whether dismissal is appropriate under the two-dismissal rule, each count is evaluated individually. (*Id.* at p. 1197, citing *People v. Woods* (1993) 12 Cal.App.4th 1139, 1155; *Dunn v. Superior Court* (1984) 159 Cal.App.3d 1110, 1114.)

Section 1387.1, subdivision (a) creates an exception to the two-dismissal rule for violent felonies: "Where an offense is a violent felony, as defined in Section 667.5 and the prosecution has had two prior dismissals, as defined in Section 1387, the people shall be permitted one additional opportunity to refile charges where either of the prior dismissals under Section 1387 were due solely to excusable neglect. In no case shall the additional refiling of charges provided under this section be permitted where the conduct of the prosecution amounted to bad faith." Under the statute, "'excusable neglect' includes, but is not limited to,

error on the part of the court, prosecution, law enforcement agency, or witnesses." (§ 1387.1, subd. (b).)

Pursuant to section 1387.2, the parties may agree to proceed on the existing accusatory pleading in lieu of the court issuing an order terminating the action. "For the purposes of Section 1387, the action shall be deemed as having been previously terminated. The defendant shall be rearraigned on the accusatory pleading and a new time period pursuant to Section 859b or 1382 shall commence." (§ 1387.2.)

**Proceedings**

In an information filed on September 23, 2016, in Case No. TA139595, Brown was charged with one count of robbery (§ 211 [count 1]) and one count of felon in possession of a firearm (§ 29800, subd. (a)(1) [count 2]). On April 7, 2018, he was convicted of the felon in possession of a firearm charge, but the jury was unable to reach a verdict as to the robbery charge. The prosecution indicated that if the court imposed the maximum sentence of 12 years on the felon in possession of a firearm charge, it would not pursue the robbery charge. At the sentencing hearing on May 18, 2017, the court sentenced Brown to 12 years in prison. The People stated that "[i]n light of the sentence on count 2, we will not proceed in count 1." The trial court dismissed count 1 pursuant to section 1385, and took the trial date for that count off calendar.

15

Brown appealed his conviction for felon in possession of a firearm (count 2), and this court reversed for instructional error. The remittitur issued on October 24, 2018, and the case was returned to the Superior Court.

On November 1, 2018, the case, still consisting solely of the felon in possession of a firearm charge in count 2, was called for a pre-trial conference.[5] At the next pre-trial conference hearing on November 7, 2018, Brown rejected the People's plea offer of six years in prison. The parties agreed to dismiss the case and immediately re-file pursuant to section 1387.2.

Trial on both counts commenced on February 21, 2019. On February 26, 2019, after the jury had been empaneled but before the presentation of evidence, defense counsel orally moved for the case to be dismissed pursuant to section 1387. The prosecutor informed the court that he had not prosecuted Brown in the first case, and that he would have to speak to the prosecutor who handled the case regarding the details of any prior dismissals. The prosecutor did not believe the dismissal of the robbery charge could preclude re-filing because the count was dismissed as part of a plea bargain. The court stated that section 1387.1 could be

_____

[5] The minute order dated November 1, 2018, reflects that the information for the matter that was the subject of the pre-trial conference was filed on September 23, 2016, and the case number was TA139595—the same case number and information under which Brown was originally charged. The minute order lists a single count: "Count 02: 29800(A)(1) PC FEL."

implicated—i.e. that the prosecution could re-file only upon a showing of "excusable neglect." The court believed that the prosecutor was entitled to notice, particularly because he had not been involved in the dismissals. The court directed the parties to state their positions on the matter in e-mails to the court in lieu of moving papers. The court then calendared the matter for later argument, and proceeded with trial.

On February 27, 2019, the prosecutor e-mailed the court a summary of the proceedings to date, and argued that the court's dismissal of the robbery charge at the sentencing hearing did not operate as a dismissal for purposes of double jeopardy.

On the same day, the former prosecutor filed a declaration stating that, on November 2, 2018, the parties agreed to dismiss and re-file the matter pursuant to section 1387.2, because the prosecution had difficulty locating Clark to testify, and because both counsel had received the 690-page transcript from the first trial only nine days prior to trial.

In a discussion outside the presence of the jury on February 27, 2019, the trial court noted that it had received the e-mail from the prosecutor and an e-mail from defense counsel regarding their positions. The court marked the e-mails as exhibits A and B, respectively.

The trial court noted, "Also what's interesting is that, technically, only the 211 violation was dismissed initially. The unlawful possession charge was not dismissed, but,

17

rather, is before the court because of a [remittitur] because it got reversed on appeal."

The prosecutor argued that the robbery count was not dismissed for purposes of 1387. The prosecutor stated, "[i]t was the court's own motion, in light of the sentence to dismiss," and that the dismissal did not operate as an order terminating the action pursuant to section 1385. He clarified that the count was not dismissed until after Brown had been sentenced. The trial court was not persuaded. The trial court asked the People to address "what necessitated the second dismissal" on November 7, 2018, i.e. whether there was excusable neglect.

The People responded that the "excusable neglect" standard did not apply because there was not a "two-time dismissal." The inquiry would only be relevant under section 1387.1.

The court gave its indicated ruling: the dismissal of the robbery charge at the sentencing hearing terminated the action within the meaning of section 1387, but the prosecution's neglect would be excusable if the case had been dismissed pursuant to section 1387.2 due to "witness issues."

Argument on the motion to dismiss was heard on February 28, 2019, while the jury was deliberating. The court found that the robbery in count 1 qualified as a violent felony, which triggered a possible exception to the two-dismissal rule under 1387.1. The court stated that the only issues to resolve were whether there was "excusable neglect," and whether the People's conduct amounted to bad

18

faith under section 1387.5, which would bar the exception to the two-dismissal rule.

Counsel clarified that the defense was not alleging bad faith, only contesting excusable neglect. She argued that the prosecutor had not exercised due diligence in attempting to locate Clark—the prosecutor had not subpoenaed Clark or engaged an investigator when he failed to return her phone calls.

The prosecutor who agreed to the dismissal testified in conformance with her declaration. She explained that, in addition to other difficulties, Brown had been unwilling to waive time.

Relying on *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, and *People v. Massey* (2000) 79 Cal.App.4th 204, the trial court explained that it did not believe it was required to find that the prosecution had acted with due diligence before the court could find excusable neglect. The court ruled, "And I find in this matter, there was excusable neglect, specifically how [Brown] was not waiving time. It now makes sense to the court as to why the D.A. decided to preemptively dismiss it on the 51 of 60 date because they had 600-plus pages of transcript to review, which is a valid reason . . . ." The court denied the motion to dismiss.

The jury convicted Brown of robbery (count 1) and felon in possession of a firearm (count 2).

## Analysis

In the opening brief, Brown asserts for the first time that the chronology of dismissals and re-filings was as follows:

"The first dismissal occurred on April 7, 2017.[6]  The court dismissed the robbery count pursuant to section 1385 believing that the People were disinclined to proceed on it.

"*The second dismissal occurred on August 24, 2018, when the Court of Appeal reversed the judgment.*

"*The prosecution re-filed the case, including the robbery charge and the related enhancements.*  On November 7, 2018, the third dismissal occurred when the People dismissed the case[, and] re-filed, with the consent of appellant, pursuant to section 1387.2."  (Italics added.)

In a footnote, Brown explains that the information that was purportedly filed following our remand "is not included in the record.  Presumably, however, there was a refiling

---

[6] The parties appear to be confused regarding the date of this first dismissal.  Although the prosecutor suggested that the People would not pursue the robbery count if the court imposed a 12-year sentence in count 2 in a hearing on April 7, 2017, the dismissal itself did not occur until after the sentence was pronounced on May 18, 2017.

prior to December 10, 2018, otherwise there would have been no related hearings."[7]

At trial, the court did not indicate, nor did the defense argue, that our reversal on appeal acted as a dismissal of the felon in possession of a firearm charge. Additionally, neither the trial court nor the parties suggested that both (or either) of the charges were re-filed prior to the dismissal and re-filing under 1387.2 on November 7, 2018. There is no evidence in the record to support that there was a re-filing. To the contrary, the minute order for the November 1, 2018 pre-trial conference indicates that the matter at issue was count 2, a single charge of felon in possession of a firearm, filed under the original case number and charged in the same information as the offenses litigated at Brown's original trial. Thus, contrary to Brown's assertions, on November 7, 2019, the robbery charge had not yet been revived, and it was the felon in possession of a firearm charge alone that was dismissed by agreement under section 1387.2.

The record demonstrates that the robbery charge was dismissed once, at Brown's first sentencing hearing on May 18, 2017, based on the prosecutor's belief that Brown was

---

[7] The significance of the December 10, 2018 date is unclear. The next scheduled hearings on both counts were set for November 14 and 26, 2019.

21

being sentenced in accordance with the parties' agreement.[8] The felon in possession of a firearm charge was also dismissed only once, on November 7, 2018, when the parties agreed to proceed on the September 23, 2016 information under section 1387.2, in lieu of an order of dismissal.

The trial court appears to have found that two dismissals occurred because it did not recognize that counts must be considered individually under the two-dismissal rule. (See *Mason, supra,* 140 Cal.App.4th at p. 1197.) In fact, although there were two dismissals total, there was only one dismissal with respect to each count. The two-dismissal rule was not implicated, and it was not necessary for the court to determine whether the prosecution's conduct amounted to "excusable neglect."

Although we disagree with the trial court's reasoning, we agree with its result, and we affirm its denial of Brown's motion to dismiss. (See *People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11, citing *People v. Geier* (2007) 41 Cal.4th 555, 582 ["Although this analysis is different from the trial court's, 'we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm'"].)

---

[8] We presume, but need not decide, that the trial court's May 18, 2017 dismissal of the robbery count terminated the proceedings with respect to that count for purposes of section 1387.

*Bifurcation of Gang Enhancement and Admission of Prior Gang Crimes Evidence*

Brown contends that the trial court abused its discretion by refusing to bifurcate the gang enhancements, and by admitting prior gang-related crimes evidence in 2009 and 2015. We reject both contentions.

**<u>Proceedings</u>**

Prior to trial, the prosecution moved to admit evidence pursuant to section 1101, subdivision (b), that: (1) on December 6, 2015, Brown and Denman were involved in a shooting incident at the location of the instant crime; and (2) on November 19, 2009, Brown and two self-admitted PVCC members drove into rival gang territory and a "shootout" occurred. The prosecution also sought to admit photographs of Brown taken from social media sites on the internet that suggested he was affiliated with PVCC.

In a hearing outside the presence of the jury, the trial court ruled that social media evidence of Brown's gang involvement and affiliation was admissible. Defense counsel objected solely on the basis that there was a lack of proper foundation for the evidence.

The prosecutor then described the 2015 incident as a "shootout between members in the community" that occurred at the scene of the instant robbery, involving both Brown and Denman. Surveillance video of the incident showed

Brown returning gunfire. The police recovered a shotgun and a .45 caliber firearm—potentially the same caliber used in the instant robbery[9]—from the scene. A court found that Brown acted in self-defense at a preliminary hearing on the matter. The prosecutor intended to call Los Angeles County Sheriff's Department Detective Nikolai Vavakin, who conducted the investigation and reviewed the surveillance video. When Brown was detained by officers, Detective Vavakin heard him shout to the victim, "You a bitch. You called the cops on the hood. You fucken snitch." The People's gang expert would testify that the "phraseology" was consistent with the incident being gang-related.

Defense counsel argued that the evidence was more prejudicial than probative under Evidence Code section 352. Brown was the victim in the 2015 incident and was not prosecuted. It was determined that he was acting in self-defense.

The prosecutor argued that the evidence was more probative than prejudicial because it was anticipated that Denman was traveling from Arizona State Prison to testify that he was involved in the robbery, and that Brown did not participate in the crime. The People sought to introduce the incident to show the connection and involvement between Brown and Denman, the use of firearms, and affiliation with the gang in support of the gang enhancement, and to rebut Denman's credibility. The prosecutor did not seek to admit

---

[9] Clark testified that the gun was either a .40 or .45 caliber firearm.

the surveillance video.  He requested that he be permitted to present evidence that Brown and Denman had been in the same location, in gang territory, with a gun, only three months prior to the robbery.

Defense counsel responded that it would not be unusual for Brown and Denman to be together in that location because it was Denman's home, and Brown lived just a few houses away.

The court ruled that the evidence was strongly probative of the elements required to prove the gang allegation.  Given that both parties were certain that Denman would testify that he committed the robbery but Brown did not, the court found their association relevant.  The court permitted the defense to elicit that the shooting was in self-defense, and that Brown lived in the area, to alleviate any undue prejudice.

With respect to the November 19, 2009 incident, the prosecutor stated that, when Brown was almost 18 years old, he solicited two known PVCC members to drive with him into rival gang territory.  Shots were fired at their vehicle, and someone in Brown's vehicle returned gunfire.  The prosecutor sought admission of evidence of the 2009 incident, because it showed that Brown associated with PVCC as early as 2009.  The other occupants of the vehicle self-admitted their gang affiliation, but Brown denied he was associated with PVCC.  Although Brown was a minor he was charged with attempted murder in criminal court and pleaded no contest to assault with a deadly weapon.

25

The People did not intend to elicit evidence that Brown fired shots or carried a firearm. Evidence of the 2009 incident would be presented to demonstrate Brown's affiliation and allegiance to the gang. The prosecutor proposed to call Sergeant Sandoval, who created a field identification card regarding Brown in connection with the 2009 incident.

Defense counsel objected that the 2009 incident was unduly prejudicial under Evidence Code section 352.

The court precluded either side from mentioning the incidents during voir dire and gave the defense additional time to address the prosecution's motion. The court noted that recent changes in the law required that the prosecution prove up any evidence specific to a defendant relating to a gang allegation. The court stated that its only potential concern was that the evidence would be unduly cumulative, but the cumulative effect would depend on what other evidence the People proposed to admit. However, even if the court sustained an objection on the grounds that the evidence was cumulative, if the defense attempted to rebut the theory that Brown was an active gang member, the evidence would be admissible for rebuttal purposes.

The prosecutor then asked whether the court had ruled regarding bifurcating the gang enhancement.[10] Citing *People v. Hernandez* (2004) 33 Cal.4th 1040 (*Hernandez*), the prosecutor argued that the gang allegation was inextricably

[10] There is no other mention of a motion to bifurcate in the record.

26

intertwined with the robbery charge. The People intended to show that the crime was committed to benefit the gang and committed in association with a gang member.

The defense submitted on the issue without argument.

The court denied the request to bifurcate the gang enhancement, because the gang allegation and charge were intertwined, and because Denman was testifying on Brown's behalf. Any shared gang affiliation would be relevant to Denman's credibility.

The following day the court and the parties again discussed admission of the gang evidence outside the presence of the jury. The prosecutor stated that he intended to present only photographic evidence from the internet, and the evidence of the December 2015 and November 2009 incidents, to prove the gang allegation. The trial court found that, so limited, the evidence would not be overly cumulative.

Defense counsel argued that evidence of the 2009 incident was unduly prejudicial because the incident was remote in time, Brown was a minor when the offense was committed, and it was cumulative to the 2015 incident.

The court responded that, because the People had to prove up the gang allegation, Brown's participation in activity consistent with being a gang member in 2009 was circumstantial evidence that he continued to be a PVCC member in 2015, and not unduly prejudicial. The court admitted the evidence.

27

Defense counsel then reminded the court that the 2015 case had been dismissed. The court responded that counsel would be allowed to elicit testimony that the case was dismissed because Brown was deemed to have acted in self-defense, but that the incident was relevant because Brown was with Denman. The motion to admit the 2009 incident was granted.[11]

Detective Solano testified that he was familiar with a prior incident at 626 West Cypress Street in December of 2015. Defense counsel asked to approach, and the court called a recess to discuss the testimony. Defense counsel asked that the 2015 incident be sanitized because it would be highly prejudicial for the detective to mention that Brown discharged a firearm. The court stated that if Detective Solano was not present any testimony about the details of the incident would be hearsay. The court limited Detective Solano's testimony regarding the December 2015 incident to the fact that Detective Solano's knowledge of the incident caused him to focus on Brown as a suspect. The detective testified that he was aware of the December 2015 incident and used his knowledge of the people involved to generate a

---

[11] The court appointed a bar panel attorney to speak with Denman regarding testifying in the case. In a discussion outside the presence of the jury, the bar panel attorney confirmed that there were no potential Fifth Amendment issues for Denman, and that Denman still intended to testify on Brown's behalf. In Brown's prior trial, Denman testified that he participated in the robbery, but Brown did not.

line-up, but he did not testify regarding the details of the incident.

Los Angeles County Sheriff's Department Sergeant Jose Sandoval testified that, when he was a detective, he investigated an incident reported as an assault with a deadly weapon, which occurred at the intersection of Santa Fe and Penny Streets in Compton on November 19, 2009. The location was within the territory of the Santana Blocc Crips gang. Sergeant Sandoval interviewed Brown at the police station in connection with the incident and noted the information Brown gave him on a field identification card. The sergeant explained that field identification cards document encounters with suspected gang members. He suspected that Brown was a gang member because of his "gang dress," the area where the incident took place, and Brown's companions. When Sergeant Sandoval spoke to Matthew Mundon, who was with Brown at the scene, Mundon admitted to being a member of PVCC.

Defense counsel objected to the testimony regarding Mundon's self-admitted gang membership on hearsay grounds. A side bar was held and the court sustained the objection.

The prosecutor then indicated that he intended to elicit testimony regarding the field identification card based on the sergeant's discussion with Brown, which he argued was admissible as an admission of a party. The court ruled that the evidence was admissible on that basis.

29

Defense counsel argued that the details of the 2009 and 2015 incidents should only be admitted if Denman testified that he and Brown were not gang members. She conceded that testimony regarding the preparation of the field identification card with respect to Brown was admissible, but not the details of the incidents or Brown's alleged involvement, unless that evidence was admitted for impeachment purposes.

The court ruled that the prosecution's expert could opine that the area where the 2009 incident took place was in Santana Blocc Compton Crips territory, and that any statements Brown made to the sergeant were admissible. None of the other evidence would be admitted.

Defense counsel argued that any details of the incident that Brown relayed to Sergeant Sandoval should not be admissible if Brown did not testify. The court disagreed. The court ruled that all of Brown's statements were admissions of a party, probative of the gang allegation, and not unduly prejudicial. After further discussion, the prosecutor proposed utilizing Brown's statement regarding his location and the expert's opinion that the location was in gang territory to establish that Brown was in gang territory. Defense counsel stated that she did not object if the evidence was elicited in that manner.

Trial resumed, and Sergeant Sandoval testified that he completed a field identification card on Brown, which indicated that Brown was a suspected PVCC member, but that Brown's affiliation with the gang was not confirmed.

The card indicated that Brown was arrested with Matthew Mundon and Walter Brooks for assault with a deadly weapon. He was in "gang dress" in a "gang area." Brown told the sergeant that he was at 700 West Laurel Street before he got into the car with Mundon and Brooks.

Los Angeles County Sheriff's Department Deputy Javier Guzman testified that on December 6, 2015, he responded to a call of gunshots heard at 731 South Matthisen Street. When he arrived, Brown was at the scene: "[H]e was detained by assisting deputies. And as we were detaining all parties -- all involved parties, he had made some comments about someone calling the cops and being a snitch." "He said, 'You bitch. You called the cops on the hood. You fucking snitch.'" Deputy Guzman observed a victim lying on the ground with a gunshot wound.

Sergeant Nikolai Vavakin was a detective assigned to the gang unit in Compton when he responded to a call on December 6, 2015. He was called because the incident took place in PVCC territory. Three individuals shot at Lorenzo Tumbling, a member of the West Side Piru street gang, which was a rival of PVCC at that time. Tumbling was shot in the arm and had to be transported to the hospital. Sergeant Vavakin reviewed surveillance video of the incident depicting Brown at the scene. A single expended .45 caliber cartridge was found where the incident occurred.

On cross-examination, Sergeant Vavakin testified that Brown was arrested, but the case against him was dismissed

at the preliminary hearing because the court found that he acted in self-defense.

Detective Lawler testified that on November 19, 2009, he came into contact with Brown at the corner of Santa Fe Avenue and Penny Street in Compton. The area was in Santana Blocc Compton Crip territory. The victim of a shooting had reported the incident. Detective Lawler spoke with Brown, who admitted he was a PVCC member.

## Bifurcation of the Gang Enhancements

*Legal Principles*

We review the trial court's denial of a motion to bifurcate a gang enhancement from the substantive crimes for abuse of discretion. (*People v. Hernandez, supra,* 33 Cal.4th at p. 1048.) A defendant can meet this burden by showing the evidence supporting the enhancement has scant relevance to the substantive crimes, and trying the two together would be unduly prejudicial. (*Id.* at p. 1049.) "But evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.] To the extent the

evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary." (*Id*. at pp. 1049–1050.) The fact that some of the enhancement evidence is admissible to prove the substantive gang charge is one factor to consider, but is not dispositive. (*Id*. at p. 1050.)

*Analysis*

The People assert that by failing to make an adequate record regarding the issue, Brown forfeited the argument that the trial court abused its discretion by refusing to bifurcate the gang enhancements from the substantive offenses. The record is scant, but the prosecution argued its position and the trial court ruled on the matter. In an analogous situation, our Supreme Court has stated that it is at least arguable that a claim is preserved. (*People v. Valdez* (2012) 55 Cal.4th 82, 143.) We need not decide whether the claim has been forfeited, however, as the argument fails on the merits.[12]

In this case, the gang enhancements and the robbery were intertwined. Brown's defense was one of mistaken

_____

[12] Brown's argument that his due process rights were violated by the trial court's refusal to bifurcate, in contrast, is waived. There is no indication in the record that the issue was argued by the parties or considered by the trial court.

identity. Brown was not arrested at the scene, and it was uncontested that Denman, who had pleaded no contest to committing the robbery, would testify that Brown did not participate in the robbery. The gang-related evidence tended to show that (1) Brown had been involved in an incident at the same location with the same companion, only three months before the charged incident, and (2) Denman was connected to Brown not only as a friend, but also through their mutual gang membership, and that PVCC had a strict code against "snitching."

Denman and Brown were both involved in an incident at the same location where the robbery took place, only a few months earlier. The fact that an admitted perpetrator of the charged offense was the defendant's partner in an uncharged crime is highly probative of identity. (*People v. Haston* (1968) 69 Cal.2d 233, 249–250.) "There is only one [Justin Dijon Brown], and his conjunction with [Denman] in [an] earlier [crime], together with [Denman's] admitted participation in the robber[y] charged, supports the inference that [Brown] and not some other person was his accomplice in those charged offenses." (*Id*. at p. 249.) That the uncharged offense took place within such a short time before the robbery at the same location further supports the conclusion that the perpetrators were the same.

The evidence also undermined Denman's credibility. In addition to being connected by friendship, Brown and Denman were tied by the arguably stronger bond of gang membership, with its stringent code against snitching.

Detective Solano explained that the prohibition against "snitching" on other gang members was central to gang culture; gang members had to be able to rely on one another's silence to successfully commit crimes and advance their reputations. Denman echoed this sentiment when he testified that he would never snitch. Brown's statements at the scene of the December 2015 incident—"'You bitch. You called the cops on the hood. You fucking snitch.'"—amplified the importance of this code among gang members. The evidence tended to show that, as fellow PVCC members, Brown and Denman were bound by this code, providing a strong reason for Denman to lie.

In light of the importance and probative value of the gang-related evidence to Brown's participation in the robbery and the credibility of Denman's account of the robbery, we cannot say that the trial court abused its discretion by refusing to bifurcate the gang allegations.

## **Admission of Prior Gang-Related Crimes Evidence**

*Legal Principles*

"Only relevant evidence is admissible . . . ." (*People v. Harris* (2005) 37 Cal.4th 310, 337 (*Harris*); Evid. Code, §§ 210, 350.) Evidence is relevant if it "'tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' [Citation.]"

35

(*Harris*, *supra*, 37 Cal.4th at p. 337.)  Trial courts have broad discretion in determining whether evidence is relevant.  (*Ibid*.)  We review a trial court ruling on the admissibility of evidence for an abuse of that discretion.  (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

"[E]vidence [that] a person committed a crime, civil wrong, or other act" is admissible when it is relevant to prove some fact such as "motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident" (Evid. Code, § 1101, subd. (b)), "'or to overcome any material matter sought to be proved by the defense.'  [Citation.]" (*People v. Alcala* (1984) 36 Cal.3d 604, 631, superseded by statute on other grounds as stated in *People v. Falsetta* (1999) 21 Cal.4th 903, 911).  Even when evidence is relevant under Evidence Code section 1101, subdivision (b), however, it must be excluded under Evidence Code section 352 if its prejudicial effect substantially outweighs its probative value.  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.)

Evidence Code section 352 is intended to prevent undue prejudice, that is ""evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues,'" not the prejudice 'that naturally flows from relevant, highly probative evidence.'  [Citations.]" (*People v. Padilla* (1995) 11 Cal.4th 891, 925, overruled on other grounds by *People v. Hill* (1998) 17 Cal.4th 800.)  The courts recognize that gang evidence may have a "highly inflammatory" impact.  (*People*

*v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.)
"[E]vidence of gang membership is often relevant to, and
admissible regarding, the charged offense.  Evidence of the
defendant's gang affiliation—including evidence of the
gang's territory, membership, signs, symbols, beliefs and
practices, criminal enterprises, rivalries, and the like—can
help prove identity, motive, modus operandi, specific intent,
means of applying force or fear, or other issues pertinent to
guilt of the charged crime." (*Hernandez, supra*, 33 Cal.4th at
p. 1049.)  Gang evidence may also be relevant to credibility.
(See *People v. Burgener* (2003) 29 Cal.4th 833, 869 [gang
evidence tending to show why a witness might be reluctant
to testify was probative and admissible].)  This court will not
disturb a trial court's exercise of discretion under Evidence
Code section 352 absent a showing that the trial court
abused its discretion.  (*People v. Branch* (2001) 91
Cal.App.4th 274, 281–282.)

> *Analysis*

As we have discussed, the gang evidence in this case
was highly probative of identity and credibility.  Any
prejudice to Brown was due to its relevance, rather than to
some unique tendency to provoke bias against him for
reasons unrelated to the issues.

Additionally, the evidence was not improperly
inflammatory, because the trial court restricted the evidence
to limit its prejudicial effect.  With respect to the 2009

37

incident, Sergeant Sandoval testified that he responded to a report of assault with a deadly weapon in Santana Blocc Compton Crip Territory and generated a field identification card on Brown in which he indicated that he suspected Brown was a gang member due to the location, his manner of dress, and companions.  Detective Lawler testified that he also came into contact with Brown in Santa Blocc Compton Crip territory in November 2009, after the victim of a shooting reported an incident.  Brown admitted to Detective Lawler that he was a PVCC member.  No evidence was presented that Brown himself was arrested or committed a crime, or that he initiated the incident by soliciting two PVCC members to drive into rival Santa Blocc Compton Crip territory.

Regarding the 2015 incident, Deputy Guzman testified that he responded to a call of gunshots heard at 731 South Matthisen Street.  Deptuy Guzman observed a victim lying on the ground with a gunshot wound.  Brown was present at the scene, where the deputies were detaining "all involved parties," and commented that someone had called the police and snitched.  Sergeant Vavakin testified that he responded to the December 2015 call because the incident took place in PVCC territory.  Three individuals had shot a member of the West Side Piru street gang, which was a rival of PVCC, in the arm.  Sergeant Vavakin reviewed surveillance video of the incident depicting Brown at the scene.  He testified that deputies recovered a single expended .45 caliber cartridge.  On cross-examination, Sergeant Vavakin testified that

Brown was arrested, but that the case against him was dismissed at the preliminary hearing because the court found that he acted in self-defense.

There was little to no evidence of Brown's specific role in the two incidents. The evidence tended to show that he was a gang member, and that he had recently been involved in an incident in Denman's company, at the location where the robbery took place. Defense counsel elicited that Brown had been arrested, but she also elicited that a judge found Brown had acted in self-defense. In short, the evidence of the two incidents was carefully sanitized to reveal only the evidence that was relevant to the prosecution's case and none of the peripheral details that might tend to unfairly prejudice Brown. Under the circumstances, we cannot say that the trial court abused its discretion in admitting the evidence of the 2009 and 2015 incidents.[13]

## *Cumulative Error*

Brown contends that the cumulative errors at trial deprived him of due process. As we have concluded that the trial court did not err, the contention necessarily fails. (See *People v. Hines* (1997) 15 Cal.4th 997, 1061.)

---

[13] Brown argues for the first time on appeal that admission of the gang evidence violated due process because the evidence had no relation to the charged offenses. Failure to raise the issue at trial forfeits the claim. (*People v. Geier*, *supra*, 41 Cal.4th at pp. 609–611.)

### *Prior Prison Term Enhancements*

We agree with the parties that Senate Bill No. 136 applies in Brown's case, and we modify the judgment to strike the two 1-year enhancements imposed under section 667.5, former subdivision (b).

As relevant here, section 667.5, former subdivision (b), mandated that a one-year enhancement be imposed "for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony; provided that no additional term shall be imposed under this subdivision for any prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended. A term imposed under the provisions of paragraph (5) of subdivision (h) of Section 1170, wherein a portion of the term is suspended by the court to allow mandatory supervision, shall qualify as a prior county jail term for the purposes of the one-year enhancement."

The trial court imposed and stayed the section 667.5, former subdivision (b) enhancements in Brown's case based on his convictions for assault with a deadly weapon in violation of section 245, subdivision (a)(2), and felon in

40

possession of a firearm in violation of 29800, subdivision (a)(1). Senate Bill No. 136 eliminates the one-year prior prison term enhancement for all felonies that are not sexually violent offenses, and thus lessens the penalty for prisoners, like Brown, whose prior prison terms were imposed for non-sexually violent felonies. Because Brown's appeal was not yet final on January 1, 2020, when Senate Bill No. 136 became effective, Senate Bill No. 136 applies. (*People v. Winn* (2020) 44 Cal.App.5th 859, 872–873; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342.)

Section 667.5, subdivision (b) no longer authorizes imposition of enhancements based upon the offenses for which Brown was convicted. We agree with the parties that while a partial reversal usually warrants remand to allow the court to exercise its full sentencing discretion (*People v. Buycks* (2018) 5 Cal.5th 857, 893–895), here the trial court already stayed the enhancements, so there is no other manner in which the court could change Brown's sentence without imposing a longer sentence than is permitted (*People v. Lopez* (2019) 42 Cal.App.5th 337, 342 [remand is not necessary where there is no need for the trial court to exercise discretion]). We order that the abstract of judgment be modified to reflect that the two 1-year enhancements imposed and stayed under section 667.5, former subdivision (b) are stricken.

## DISPOSITION

The judgment is modified to reflect that the two 1-year prior felony conviction enhancements imposed under section 667.5, subdivision (b), are stricken. As so modified, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.


MOOR, J.

We concur:


RUBIN, P. J.


BAKER, J.

42